BERNARD D. LARSEN

*vs.*

MELVIN LANE

Kennebec. Opinion, March 17, 1960.

*Niehoff & Niehoff,* for plaintiff.

*John J. Jabar,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., did not sit.

TAPLEY, J. On motion for new trial. This is an action in assumpsit wherein plaintiff seeks payment for labor and services in doing electrical work. The action was tried before a jury at the June Term, 1959 of the Superior Court, within and for the County of Kennebec. The jury returned a verdict favoring the plaintiff in the sum of $1192.60. Defendant filed a motion for a new trial directly to the Supreme Judicial Court sitting as a Law Court.

The plaintiff is an electrician, doing business in Waterville. The defendant, Mr. Lane, is engaged in the meat business and at the time of this action operated a chain of stores known as Bi-Rite Meat Market. The Waterville store of Bi-Rite Meat Market experienced difficulty with the electrical system and Mr. Larsen was called. The building was not owned by defendant, Mr. Lane. In order for the Bi-Rite Market to receive electric current it was necessary to do electrical work which, in part, would benefit other portions of the building with which Mr. Lane was not concerned.

The defendant contends that there was insufficient evidence on the part of the plaintiff to show the necessary elements constituting an agreement on the part of Mr. Lane requiring him to pay the account and that the jury verdict was based on guesswork and conjecture.

Plaintiff testified of conversation between himself and defendant, Mr. Lane, regarding the electrical work to be done and the payment for it:

"Q. Will you tell the Court and jury who first contacted you relative to this work?

A. I was called into the store on a blown fuse by one of the clerks, and the electric entrance was practically burned up and had to be changed.

Q. Did you have conversation with Mr. Melvin Lane?

A. Yes, sir.

Q. What was the conversation?

A. We had to go back to the building owner first and the Levines said they would only furnish the main entrance box, and it was all they would furnish for the job.

Q. Did you convey that information to Mr. Lane?

A. I went back to the store and told Mr. Lane— he was back of the meat counter—and told him it would run to considerable size and he told me to make out two separate bills and mail them to him and he would take care of them."

The burden is on the moving party to demonstrate that the verdict is clearly and manifestly wrong. *Day* v. *Isaacson,* 124 Me. 407. The verdict must stand unless there is found in the record no credible evidence to support it. *Lyschick* v. *Wozneak,* 149 Me. 243.

In the case of *Bowie* v. *Landry,* 150 Me. 239, at page 241, this court said:

"A verdict by a jury on a properly submitted issue should not be set aside even when there is strong doubt of the actual occurrence or existence of a fact found by a jury. If the evidence is conflicting, their finding will not be disturbed on that ground. A new trial will not be granted unless the verdict is clearly wrong. Where there is evidence to support a verdict and there is nothing in the case which would justify the substitution of the judgment of the court, who did not see nor hear witnesses, for that of the jury who did, and it appearing that the parties have had a fair trial without prejudicial error in law, the verdict should not be disturbed."

It is apparent from the record in the case at bar that there is conflicting testimony on the one side and the other, and of conflicting testimony the court said in *McCully* v. *Bessey*, 142 Me. 209, at page 212:

> "The values of conflicting bits of testimony are for the jury, and the burden of showing, to the satisfaction of the Court that the verdict is manifestly wrong, is upon the one seeking to set it aside."

A review of the record discloses a sufficiency of credible evidence to support the jury finding.

*Motion for new trial denied.*