## Levi MADORE

### v.

### LIBERTY NATIONAL BANK et al.

Supreme Judicial Court of Maine.

March 29, 1972.

Archer & Downing, by David R. Downing, Bucksport, for plaintiff.

Mitchell & Ballou by John W. Ballou, Bangor, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

The Commissioner's decision, in the absence of fraud upon all questions of fact shall be final. 39 M.R.S.A. § 99.

No fraud is alleged.

The Commissioner has found facts which have led him to this legal conclusion:

" . . . at the time of his unfortunate accident Mr. Madore was not an employee of the Respondent bank, but was rather an independent contractor and therefore, not entitled to the benefits of the Workmen's Compensation Act."

This appeal from the pro forma decree of the Justice of the Superior Court has brought the issue before us. We agree the ultimate conclusion of the Commission was correct and deny the appeal.

Levi Madore is a painter. His testimony at the hearing before the Commissioner demonstrates that he usually worked for an hourly rate of pay for various paint contractors whenever there was work.

At the time he sustained the injury which forms the basis of his complaint here, he was working at the Liberty National Bank doing some painting on the building at its branch bank in Bucksport.

To the question: "Would you tell the Commissioner how you happened to be working there?"

He replied: "Well, I received a call from the Liberty National Bank on the 3rd of April and I think Mr. Johnson called me at my house that the manager of Liberty National Bank of Ellsworth wanted to see me, that he had a job for me. So I went down—my wife and I went down and he asked me if I was ready to do the work on Liberty National Bank.

Q. Who was that, 'he'?

A. Mr. McLain. And, I said, yes. And, we was talking and he asked me when I could do it and so I told him in a couple days and that would be around the 5th of April. So he asked me what type of paint I had been using on the work around the houses and that stuff. Well, when I worked for contractors I told him I used Dupont Sherwin Williams and Pratt & Lambert Paint. Well, he told me that he would like to use Dutch Boy on the buildings, nothing else but Dutch Boy. I said, that was all right, that was good paint and I asked him about—In other words before I took the job to do it he told me that I wanted—the front had to be painted first and after the front was done he didn't care how long it took me to finish the job as long as I had the front because they was going to put a sign in front.

Q. How much of the bank were you supposed to be painting?

A. $3.00 an hour.

Q. No, how much of the bank—what were you painting on the Bank?

*   *   *   *   *   *

Q. Now, back to the conversation you had with Mr. McLain, did you give him an estimate on the cost of that job?

A. No. As far as I know I didn't because it was too small of a job and then —

Q. Did you tell him it would cost about a certain amount or anything?

A. Well, I said it would take 4 days at $3.00 an hour and I would say $100.00 anyway.

Q. What about the paint?

A. The paint he told me to go out and buy it and when I got through with the job to send the bill and the paint come up to around 45 something, but I went over and got it and I figured with my gas—I figured a few dollars more to get down from Bangor. I think I should have had a few dollars more for my gas to go and get it."

Madore received a serious personal injury when he fell from a ladder while attempting to paint the bank.

There was no evidence before the Commissioner that Madore ever had been in the employ of the bank in any capacity.

Because that is so, the situation is unlike that presented in In Re Dudley, Me., 256 A.2d 592 (1969).

In *Dudley* this Court said:

"In an action under the Act by a person who in addition to his regular work under his general employment with the defendant performs other special work which benefits his employer and forms an integral part of the regular operation of the business of the employer is presumed to be in the relationship of employee-employer, and if the defendant seeks to avoid liability under the Act on the ground that such person was an independent contractor, the burden is upon the employer who asserts such defense to show the fact. Murray's Case, supra, 130 Me. 181, 184, 154 A. 352, 75 A.L.R. 720; Dobson's Case, 124 Me. 305, 309, 128 A. 401, 42 A.L.R. 603."

The rule above stated has no application here.

■ Because there is no history of "regular work under his general employment with the defendant," there is no presumption here to aid the petitioner.

■ He has the burden of establishing that he was an employee of the bank and that his injury arose out of and occurred during the course of his employment. White v. Monmouth Canning Company, Me., 228 A.2d 795 (1967).

In Murray's Case, 130 Me. 181, 154 A. 352 (1931), this Court said:

"Commonly recognized tests of the relationship in issue, [employee or independent contractor] although not necessarily concurrent or each in itself controlling, are (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer."

In the instant case:

(1) Mr. Madore was given a purchase order which specified that he was "to paint all exterior woodwork, including scraping, prime coat, one finish coat of Dutch Boy Paint" and the price was $150.00.

(2) The business of painting the exterior of the building is by its nature an independent calling.

(3) After the petitioner's injury, his brother finished the job and was paid the sum of $50.00 for doing so by the petitioner.

(4) The petitioner furnished his own brushes and except for one ladder he borrowed from the bank, he rented all ladders and paid for their rent.

(5) Except as he was asked to start his painting at a certain place on the bank in order to allow the bank to continue some other work it was doing, Mr. Madore had control and the right to control the progress of the work.

(6) He was engaged in this work for the bank only during the time it took him to complete the job.

(7) He was actually paid $150.00 for the job, and

(8) The regular business of the bank is banking.

■ On the facts which he found, the Commissioner was compelled to reach the legal conclusion that petitioner had failed in his burden to establish that he was an employee and not an independent contractor, when the facts found are subjected to the tests described in *Murray's Case*, supra.

The entry must be,

Appeal denied.

All Justices concurring.