Larry K. HARLOW

v.

AGWAY, INC., and/or Travelers Insurance Company.

Supreme Judicial Court of Maine.

Nov. 7, 1974.

Bennett & Schwarz by Peter J. Detroy, III, John N. Kelly, Portland, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Robert F. Hanson, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

A decree of the Industrial Accident Commission awarded the plaintiff compensation on the theory that at the time of an accidental injury he was an employee of Agway, Inc. (Agway). A Justice of the Superior Court rendered a pro forma decree pursuant to 39 M.R.S.A. § 103, sustaining the award, from which defendants have seasonably appealed.

We sustain the appeal.

The only issue which requires our consideration is generated by the conclusion of the Commissioner that "[a]n implied contract of employment is found on the facts of this case."

The Workmen's Compensation Act mandates the payment of compensation to "an employee [who] . . . receives a personal injury arising out of and in the course of his employment." 39 M.R.S.A. § 51. An "employee" is defined by the Act as one "in the service of another under any contract of hire, express or implied, oral or written." 39 M.R.S.A. § 2(5).

■ Certain well established principles guide our appellate review of the issue. We have no authority to deviate from findings of fact made by a Commissioner which are supported by competent evidence (and such reasonable inferences as may be drawn therefrom). Overlock v. Eastern Fine Paper, Inc., 314 A.2d 56 (Me. 1974); Bolduc v. Pioneer Plastics Corporation, 302 A.2d 577 (Me.1973); Soucy v. Fraser Paper, Limited, 267 A.2d 919 (Me. 1970). However, misapplication of legal principles to established facts constitutes reversible error. Crosby v. Grandview Nursing Home, 290 A.2d 375 (Me.1972). Likewise subject to appellate review is the reasoning process by which a Commissioner may reach his legal conclusions. Sargent v. Raymond F. Sargent, Inc., 295 A. 2d 35 (Me.1972); Stanley v. Petroleum Tank Service, Inc., 284 A.2d 280 (Me. 1971).

We have been guided by these concepts since this Court held in Mailman's Case, 118 Me. 172, 177, 106 A. 606, 608 (1919):

"But the inferences which the commissioner draws from proved or admitted circumstances must needs be weighed and tested by this court. Otherwise it cannot determine whether the decree is based on evidence or conjecture.

In other words, the court will review the commissioner's reasoning but will not, in the absence of fraud, review his findings as to the credibility and weight of testimony."

Being thus conscious of the limitations on the scope of appellate review, we must now inquire whether there were facts before the Commissioner from which he could conclude, or rationally infer, that an implied "contract of hire" existed between the plaintiff and Agway at the time of the accidental injury.

Only two witnesses appeared before the Commissioner, namely, the appellee and his father. The father's testimony had no bearing on the employment issue and dealt only with his notification to Agway that his son had been accidentally injured while helping unload one of Agway's trucks.

The appellee testified that he was regularly employed as a fabricator at the Bancroft and Martin plant and resided in South Portland. On the day of the accident he had volunteered to help his father during the daytime at the father's store in Pownal and at the time of the accident was alone in the store.

Appellee's brother was building a home in Pownal located about one mile distant from the father's store. He had ordered some "sheet rock" from Agway, which was to be delivered at the building site from Agway's Auburn place of business.[1] An Agway truck arrived at the Pownal store and the appellee gave the driver route directions to his brother's new home. The driver of the Agway truck was unable to complete delivery because, on arriving at the building site, there was no one present who could assist him in unloading the truck and he returned to the store. At his request the appellee then assisted in unloading the truck in a barn near the store, thus avoiding the necessity of returning to Auburn without making delivery. It was while thus engaged that appellee was accidentally injured.

1. Although the record does not indicate the precise distance from Auburn to Pownal, we are aware of the fact that it would not exceed 25 miles.

We quote certain excerpts from appellee's testimony which relate directly to the issue of whether he could be considered an employee of Agway while unloading the truck.

"A.  He [Agway's truck driver] wanted to know if I could help him unload the truck, and I told him the only way I could help him was to back up to the barn and unload it right there at the house.

.        .        .        .        .        .

Q.  When you volunteered to help this individual unload the truck, did you expect to be paid by Agway?

A.  No I didn't because I figured it was only a matter of a half hour anyway.

Q.  Did you figure rather than being paid by Agway you were doing this as a favor for your brother?

A.  Yes.

Q.  Was there any discussion between you and the driver of the Agway truck with respect to payment to you or you becoming an employee of Agway?

A.  No, there wasn't.

Q.  About how long did the unloading operation take?

A.  Half hour to forty-five minutes.  I was interrupted in time.

Q.  You were interrupted because of the things you had to do in the store?

A.  Yes.

.        .        .        .        .        .

Q.  .   .   .   When you were unloading this sheet rock did you in your own mind  .   .   .   feel that you were

an employee of Agway at that time?

A.  No."

It is emphasized that the foregoing testimony is the only evidence in the record bearing on the issue of whether a contract of hire existed.

■   An essential element in creating an employer-employee relationship, and consistent with the purposes for which the Workmen's Compensation Act was enacted, is payment, or expected payment, of some consideration by an employer to an employee, thus excluding from coverage "purely gratuitous workers who neither receive, nor expect to receive, pay or other remuneration for their services."   Board of Ed. of City of Chicago v. Industrial Com'n, 53 Ill.2d 167, 171, 290 N.E.2d 247, 250 (1972); *see* 1A Larson, Workmen's Compensation Law, § 47.10.

■   We have very recently discussed an equally essential element which gives rise to the existence of an employer-employee relationship.  In Owen v. Royal Industries, Inc., 314 A.2d 60 (Me.1974), we reaffirmed the holding of In re Dudley, 256 A.2d 592, 595 (Me.1969), namely:

" 'We reiterate that the vital test to prove the existence of the employer-employee relationship is whether or not the employer has retained the right to control.  The right to control on the other hand is best established by the right in the employer  .   .   .   to discharge the employee at will,' "

and added:

"It is the right to control and the right to fire, not the exercise of these rights, which we deem to be important criteria in establishing an employment status."

Owen v. Royal Industries, Inc., 314 A.2d at 62.

■ These doctrines conjoined exclude from coverage one accidentally injured while gratuitously performing a type of service for another, during which he does not subject himself to any control by the person for whom such service is rendered.

■ The following facts clearly emerge from the uncontroverted testimony in the record:

(1) The appellee did not expect to be paid for his services.

(2) There was no evidence from which an inference could be drawn that Agway expected to pay for the service.

(3) Since appellee felt at liberty to interrupt his work in unloading the truck because of his duties in his father's store, it is clear that he felt himself under no obligation to submit to the control of Agway.

(4) A silent record will not support an inference that Agway had any right, even though not exercised, to control the conduct of the appellee.

■ In summary, the only reasonable inference to be drawn from the testimony is that the appellee, acting voluntarily and not being under any control by Agway, rendered a purely gratuitous service with no expectation of any type of remuneration from Agway. When the Commissioner found "an implied contract of employment on the facts of this case," he was clearly erroneous and it becomes self-evident that the appellee did not establish any entitlement to compensation.[2]

The entry is:

Appeal sustained. Further ordered that $350.00 to cover counsel fees and expenses on appeal be paid by the appellants to the appellee.

All Justices concurring.

---

2. Since the facts before us do not compel it, we need not decide whether the right to compensation may arise when one submits himself to the control of another in performing a type of labor without any expectation of pay, and is accidentally injured in so doing.