**Alan D. BRUBACH**

v.

**Donald C. ALMY.**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1986.
Decided Jan. 16, 1987.

Hunt, Thompson & Bowie, James M. Bowie (orally), Portland, for plaintiff.

Richardson, Tyler & Troubh, John S. Whitman (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

CLIFFORD, Justice.

The plaintiff, Alan Brubach, sustained personal injuries when he fell from the roof of the defendant's ski chalet, which Brubach was helping to build. Brubach appeals from a judgment of the Superior Court, Sagadahoc County, denying his motions for a judgment notwithstanding the verdict and a new trial. He assigns several points of error, including erroneous jury instructions, and contends that the jury's verdict is contrary to the clear weight of the evidence. He also contends that the court abused its discretion by failing to grant his motion for a mistrial following the defendant's improper attempt to im-

peach Brubach's credibility through use of a prior conviction. Finding no reversible error, we affirm.

The jury would have been warranted in finding the following facts. In early October 1982, the defendant, Donald Almy, a sales manager for an environmental engineering firm, hired the plaintiff, Alan Brubach, to work as a carpenter building a ski chalet on land Almy owned in the Carrabassett Valley near the Sugarloaf skiing resort. Brubach, who was paid $200 weekly, was to assist Almy's son, Tony, who was in charge of the project. Brubach and Tony lived together in a neighboring camp and worked together on the ski chalet during the week. On weekends Almy and other members of his family as well as friends came to help with the construction.

It rained Friday evening, November 5, 1982. The following morning when Almy, Brubach, Tony and others arrived at the work site, intending to shingle the roof, they discovered that everything was wet. After some conversation it was decided that they would have to remove the wet tar paper Brubach and Tony had laid on the roof as an underlayment the night before in anticipation of shingling. Tony drove to nearby Kingfield to buy fresh tar paper, Brubach climbed up on the roof and began removing the wet tar paper, and the others went to work inside the ski chalet.

The danger posed by wet tar paper, which is more slippery than dry tar paper, was known and obvious to, as well as discussed by, all the principals before Brubach climbed up on the roof. As Brubach worked, he noticed that the roof was slippery, but continued to work nevertheless.

The roof was pitched. The previous evening Tony and Brubach had nailed rough-hewn two-by-four cleats to provide footing. As Brubach removed the wet tar paper, he removed the cleats as well. Brubach was near the peak of the roof when he fell.

Of his fall and of its cause Brubach remembers nothing. No one saw him fall. Almy, who had left the ski chalet to get something from his automobile, discovered

Brubach on the ground dazedly struggling to his feet. Brubach injured his neck and back, necessitating a long and painful recovery.

At trial Almy unexpectedly attempted to impeach Brubach's credibility by using a prior conviction for theft. Brubach's prompt objection prevented the jury from hearing more than his denial that he had ever been convicted of a criminal felony or a crime involving dishonesty. At the sidebar and chambers conferences that ensued it transpired that Almy had notified neither the court nor Brubach that he intended to bring up a prior conviction. Moreover, Almy came armed with only an abstract of a conviction for theft from the State Bureau of Identification. The abstract did not indicate the nature of the theft. The court delayed a final ruling until the precise nature of the theft could be determined. When on the following day it was discovered that the conviction was for joyriding, see 17-A M.R.S.A. § 360 (1983), the court sustained the objection and offered to give a curative instruction to the jury. Brubach declined the offer and moved for a mistrial. The court denied the motion.

The court instructed the jury on the duties of employers to employees and of possessors of land to invitees. Over Brubach's objection the court gave instructions on the common law defenses of contributory negligence and assumption of the risk. The jury answered in the negative the first question on the verdict form, whether Almy was guilty of negligence that was a proximate cause of Brubach's injury. The court denied Brubach's motions for a judgment notwithstanding the verdict and a new trial. This appeal followed.

## I.

Brubach contends that the court erred in refusing to give an instruction that Almy as a possessor of land had an affirmative duty of care to provide Brubach as an invitee with safe surroundings. Although

the court included in its instructions sections 343 and 343A(1) of the *Restatement (Second) of Torts* (1965),[1] as well as a brief paraphrase of these sections, the court over Brubach's objection refused to give Comment f to section 343A.[2]

■ We do not decide whether in circumstances of obvious or known danger sections 343 and 343A without Comment f are insufficient to inform the jury of the scope of the duty of a possessor of land, *but see Isaacson v. Husson College*, 297 A.2d 98, 104–05 (Me.1972), because we think Brubach misconstrues the nature of his relationship with Almy. Almy's relationship with Brubach was essentially that of employer-employee, not possessor-invitee, and Almy's legal duty towards Brubach must be gauged accordingly.

■ The court correctly instructed the jury that an employer had a legal duty to furnish his employees with a reasonably safe workplace. *See Hurd v. Hurd*, 423 A.2d 960, 962 (Me.1981); *Wilson v. Gordon*, 354 A.2d 398, 400–01 (Me.1976). Whether the danger causing the injury was obvious is a factor to be considered in determining the parties' relative degrees of negligence under the comparative negligence statute, 14 M.R.S.A. § 156 (1980). *Hurd*, 423 A.2d at 962; *see also Ferguson v. Bretton*, 375 A.2d 225, 227 (Me.1977). Brubach neither challenged nor requested the court to amplify these instructions. The court adequately articulated these principles insofar as they bore on Almy's duty as an employer.

Brubach relies on our recent decision, *Williams v. Boise Cascade Corporation*, 507 A.2d 576 (Me.1986), as authority for the proposition that Almy's capacity as the possessor of land is the controlling consideration. In *Williams* we held that the trial court there erred in not instructing the jury that the defendant possessor of land had a duty to warn or take corrective measures if the possessor should anticipate that harm would befall an invitee despite the invitee's knowledge of the dangerous conditions or despite the obviousness of the condition. *Id.* at 577. But Williams, the plaintiff in that action, was an employee of a contractor to whom the defendant corporation had

1. Section 343 reads as follows:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343 A reads in relevant part:

§ 343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

2. Comment f reads as follows:

f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496 D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

awarded a contract to install braking devices on its premises. Unlike Brubach, Williams was not employed directly by the corporation. Moreover, the instructions in *Williams* were erroneous because the court said in effect that there was no duty to warn if the danger was obvious and that the landowner's duty was limited to providing warnings rather than being required to take other steps to protect invitees. *Id.* at 578. Therefore our holding in *Williams* is not directly applicable to this case.

■ In testing for error in the giving of, or refusal to give, instructions, the correctness of the action of the trial court must be determined from a review of the charge in its entirety. *Towle v. Aube*, 310 A.2d 259, 266 (Me.1973). Having reviewed the court's instructions in their entirety, we find that the court adequately apprised the jury of Almy's duty as Brubach's employer.

## II.

■ Almy concedes that Brubach was an employee and not an independent contractor. Brubach argues that under the applicable provisions of the Workers' Compensation Act prevailing at the time of the accident that Almy, who had not secured workers' compensation insurance coverage, was precluded from asserting the common law defenses of contributory negligence and voluntary assumption of the risk under 39 M.R.S.A. §§ 3 & 21(1) (1978).[3] Nevertheless, simply because Brubach was an employee and not an independent contractor did not automatically entitle him to coverage under the Act.

■ Brubach came within the class of employees excluded by the since abrogated exception provided by 39 M.R.S.A. § 2(5)(A)(2) (1978):

> "Employee" shall include ... every person in the service of another under any contract of hire, express or implied, oral or written, except: ...
>
> (2) Any person whose employment is not in the usual course of the business, profession, trade or occupation of his employer.

Sometimes called the nonbusiness exemption, *see* 1C A. Larson, *Workmen's Compensation* § 50.21 (1986), this exception excludes employees who would otherwise be entitled to protection under the Act, but whose employment, usually temporary, is of a character different from the ordinary business of his employer. *See Eddy v. Bangor Furniture Co.*, 134 Me. 168, 183 A. 413 (1936); *Peters v. Michienzi*, 385 Mass. 533, 432 N.E.2d 696 (1982).

Brubach contends on appeal that the exception appearing in subsection 2(5)(A)(2) is simply a paraphrase for independent con-

---

**3.** In 1982 sections 3 and 21(1) read as follows:

**§ 3. Common-law defenses lost**

In an action to recover damages for personal injuries sustained by an employee arising out of and in the course of his employment, or for death resulting from such injuries, it shall not be a defense to an employer, except as hereinafter specified:

**1. Employee negligent.** That the employee was negligent;

**2. Fellow employee negligent.** That the injury was caused by the negligence of a fellow employee;

**3. Employee assumed risk.** That the employee has assumed the risk of the injury.

**§ 21. Liability of employer**

**1. Private employers.** Every private employer shall be subject to this Act and shall secure the payment of compensation in conformity with sections 21 to 27 with respect to employees other than those engaged in domestic service or in agriculture as seasonal or casual farm laborers, subject to the provisions hereinafter stated, except that an employer of 4 or less farm laborers shall be excused from this requirement as to such farm laborers by maintaining coverage by an employer's liability insurance policy as provided in section 4. Any private employer who has not secured the payment of compensation under sections 21 to 27 shall, in a civil action brought by the employee other than one engaged in domestic service or in agriculture as a seasonal or casual farm laborer to recover for personal injuries or death arising out of and in the course of his employment, not be entitled to the defenses set forth in section 3 and the employee of any such employer may in lieu of bringing such a civil action claim compensation from such employer under the provisions of this Act.

tractor. He cites in support of his thesis *Madore v. Liberty National Bank,* 289 A.2d 36 (Me.1972), and points to the later enactment of P.L. 1983, chs. 402 and 554 deleting the language appearing in subsection 2(5)(A)(2) and replacing it with the words "[a]n independent contractor." We cannot agree with this analysis.

The issue in *Madore,* as in many of the cases both preceding and following it,[4] was whether an injured worker was an employee or an independent contractor. This issue is addressed as a threshold matter *before* it can be determined whether the employment contract comes within the Act. Thus, under the law as it prevailed until the change in 1983, whether an individual was an independent contractor or an employee falling within the nonbusiness exemption to coverage were distinct issues. *See Mitchell's Case,* 121 Me. 455, 118 A. 287 (1922). The interpretation of subsection 2(5)(A)(2) has been settled law in this jurisdiction since our decision in *Eddy v. Bangor Furniture Co.,* 134 Me. 168, 183 A. 413 (1936).[5]

Even were we without the benefit of an established and settled construction of the nonbusiness exemption, we cannot accept the argument advanced on the strength of the Statement of Fact, L.D. 1635 (111th Legis.1983), accompanying the 1983 amendments. The Statement of Fact asserted that the amendments respond to our decision in *Timberlake v. Frigon & Frigon,* 438 A.2d 1294 (Me.1982). In *Timberlake* we stated that the traditional eight-point test for determining employee status arose from application of the common law doctrine of respondeat superior and served a different purpose from determining employee status under the Workers' Compensation Act. *Id.* at 1296–97. We emphasized the "special importance" in determining employee status of the nature of the person's work and its relation to the employer's business. *Id.* at 1297. The legislature, by deleting the language in the Act lending partial support to this special emphasis, sought to express its approval of the traditional common law analysis for determination of independent contractor status.[6] *See e.g., Madore v. Liberty National Bank,* 289 A.2d at 38; *Kirk v. Yarmouth Lime Co.,* 137 Me. 73, 78, 15 A.2d 184, 187 (1940); *Murray's Case,* 130 Me. 181, 186, 154 A. 352, 354 (1931).

■ That the legislature chose to abrogate a long-standing exception to the class of employees covered under the Act does not here concern us. Brubach was unquestionably not an independent contractor but an employee as defined in 39 M.R.S.A. § 2(5)(A). Moreover, under the law prevailing in 1982, though an employee, he came within the nonbusiness exemption provided in subsection (2)(5)(A)(2). Because the Act did not therefore control Brubach's tort action against Almy, the court did not err in giving instructions pertinent to comparative negligence and voluntary assumption of the risk.

### III.

Pursuant to M.R. Evid. 609[7] Almy's counsel attempted to impeach Brubach's

---

4. *See e.g., Harlow v. Agway,* 327 A.2d 856 (Me. 1974); *Owen v. Royal,* 314 A.2d 60 (Me.1974); *Michaud v. Charles R. Steeves & Sons, Inc.,* 286 A.2d 336 (Me.1972); *In re Dudley,* 256 A.2d 592 (Me.1969).

5. The nonbusiness exemption has been a standard feature of statutory provisions for compensation to injured employees since its adoption in 1915, P.L. 1915, ch. 265, as shown by the following sequential line of statutory provisions:
    R.S. ch. 50, § 1 (1916)
    R.S. ch. 55, § 2 (1930)
    R.S. ch. 26, § 2 (1944)
    R.S. ch. 31, § 2 (1954)

39 M.R.S.A. § 2

6. Nevertheless, we are bound to point out that in *Timberlake,* we cited 39 M.R.S.A. § 2(5)(A)(2) simply to show that our emphasis upon business purpose was in substantial conformity with the ultimate purposes of the Workers' Compensation Act as likewise manifested in its nonbusiness exemption. *See Timberlake,* 438 A.2d at 1297 n. 6.

7. M.R.Evid. 609 reads in pertinent part:
    For the purpose of attacking the credibility of a witness, evidence that he has been con-

credibility with evidence of a prior conviction:

Q Mr. Brubach, have you ever been convicted of a criminal felony or a crime involving dishonesty?

A No.

Q What is your date of birth?

A 8–21–63.

Q August 21, 1963?

A Yes.

Q Are you the same Alan Brubach whose date of birth is—?

[Brubach's counsel]: If I could see the Court briefly at side bar.

After the lengthy sidebar and chambers conferences, the trial justice sustained Brubach's objection to this line of questioning and twice offered to give the jury a curative instruction. Brubach's counsel declined the offers, on the ground that the damage was too prejudicial to be cured by an instruction and moved instead for a mistrial. The court denied the motion. Brubach contends here that the inquiry was improper and sufficiently prejudicial to merit a new trial.

■ We agree with the plaintiff that the attempt to impeach him through prior conviction of a crime was highly improper. This court set out in *State v. Toppi*, 275 A.2d 805, 812–13 (Me.1971), decided before the advent of the Maine Rules of Evidence, the "better practice" for one seeking to impeach credibility of a witness through prior conviction. As we have indicated many times, it is extremely important given the potential prejudice from asking a question when the crime may not be one authorized for use to attack credibility, or the nature of the crime is sufficiently prejudicial to justify exclusion in specific instances, that the court be presented with the facts in the absence of the jury to rule on whether the crime is one satisfying the requirements of Rule 609.[8] Equally important, it is essential that the court be afforded the opportunity to balance the probative value of the inquiry against possible prejudice to the party whose witness is being impeached. *See Toppi*, 275 A.2d at 813. This is true in civil as well as criminal cases. *See* M.R.Evid. 403 & 609.

Moreover, the party seeking to impeach should have "an appropriate record of the court in which the convictions took place," *id.* at 812, to ascertain the precise nature of the conviction and to rebut a negative answer. Here Almy's counsel had only an abstract of a court record of criminal violation obtained from the State Bureau of Identification. He did not have a certified copy of the conviction. *See* M.R.Evid. 609 advisers' note. The court was unable to determine the precise nature of the conviction until the following day when Almy's counsel obtained a certified copy of the conviction. The proponent must also "be prepared to establish that the identity of the witness is the same as the person to whom the court record refers." *Toppi*, 275 A.2d at 813. Finally, the proponent must act in good faith.[9] *Id.*

■ The court's decision denying Brubach's motion for a mistrial will be set aside only for an abuse of discretion.[10]

victed of a crime is admissible but only if the crime (1) was punishable by death or imprisonment for one year or more under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment. In either case admissibility shall depend upon a determination by the court that the probative value of this evidence outweighs the prejudicial effect to the defendant.

**8.** The form of defense counsel's question in this case is also objectionable. Even after the court has ruled pursuant to Rule 609, counsel is free only to inquire whether the witness has been convicted of the specific offense. It is totally inappropriate to inquire whether a witness has been "convicted of a criminal felony or a crime involving dishonesty."

**9.** The record reflects that despite Almy's counsel's substantial noncompliance with the guidelines set out in *Toppi*, the court expressly found that he had acted in good faith.

**10.** We express no opinion whether the court erred in ruling that a joyriding conviction was not relevant to Brubach's credibility. *But see* Field & Murray, *Maine Evidence* § 609.1 (1976); *United States v. Carr*, 418 F.2d 1184 (D.C.Cir.

*State v. Coombs,* 351 A.2d 122, 124 (Me. 1976). Despite Almy's failure to follow the *Toppi* procedure we think the court did not abuse its discretion in denying Brubach's motion. Owing to Brubach's timely objection no prejudicial remarks made their way into the record. *See State v. Morton,* 397 A.2d 171, 178 (Me.1979). Moreover, whatever trace of prejudice existed could have been obviated with a curative instruction, which Brubach declined for tactical reasons. Finally, as part of its jury instructions the court admonished the jury to ignore both questions and probable answers in cases where an objection was sustained.

### IV.

■■■ Brubach contends that the evidence was insufficient to support the jury's verdict exonerating Almy. On an appeal from the denial of a motion for a new trial, this court views the evidence in the light most favorable to the successful party. *Binette v. Deane,* 391 A.2d 811, 813 (Me. 1978). As movant, Brubach must show that the jury verdict was so manifestly or clearly wrong that it is apparent that the jury's conclusion was the result of prejudice, bias, passion or a mistake of law or fact. *Id.; Kennebec Towage Co. v. State,* 142 Me. 327, 334, 52 A.2d 166, 169 (1947). The only potential source of impropriety is the possible prejudice stemming from the improper impeachment attempt, which prejudice was, as we have concluded, minimal. Otherwise the verdict must stand unless the record compels a different result. *See Binette,* 391 A.2d at 813; *Larsen v. Lane,* 156 Me. 66, 68, 158 A.2d 759, 760 (1960). Having carefully reviewed the record, we conclude that it does not compel a contrary verdict.

The entry is:

Judgment affirmed.

All concurring.

1969), *cert. denied* 396 U.S. 1030, 90 S.Ct. 590, 24