MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2017 ME 229
Docket:      WCB-16-541
Argued:      October 12, 2017
Decided:     December 12, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


LARRY HUFF

v.

REGIONAL TRANSPORTATION PROGRAM et al.


JABAR, J.

[¶1]  Larry Huff appeals from a decision of the Workers' Compensation Board Appellate Division affirming the hearing officer's (*Collier,* HO)[1] decree denying Huff's petition for award.  Huff contends that he was an employee of Regional Transportation Program ("RTP") and was therefore entitled to receive benefits for a work-related injury.  We affirm the decision of the Appellate Division.

I.  BACKGROUND

[¶2]  The following facts, found by the hearing officer and contained in the Workers' Compensation Board decree denying Huff's petition for award,

---

[1]  Pursuant to P.L. 2015, ch. 297, § 24 (effective Oct. 15, 2015), Workers' Compensation Board hearing officers are now designated as administrative law judges (ALJ).  *See* 39-A M.R.S. § 318 (2016).  However, the decision made by now-ALJ Collier was made before this change.

2

are supported by the record. *See Harlow v. Agway Inc.*, 327 A.2d 856, 858 (Me. 1974); 39-A M.R.S. §§ 318, 322(3) (2016).

[¶3] RTP is a nonprofit agency that provides transportation services to disabled, elderly, and low-income clients throughout Cumberland County. RTP classifies its drivers into two categories: employee drivers and volunteer drivers. Employee drivers operate vehicles owned and insured by RTP. They are paid wages for their time, are not reimbursed for mileage driven, and belong to a union. They are guaranteed a certain number of hours each week and may not generally refuse assignments or days of work. In contrast, volunteer drivers own and insure the vehicles they drive. They are not paid wages but are reimbursed for mileage driven and they do not belong to a union. Volunteer drivers are allowed to refuse assignments or decline to work on any particular day.

[¶4] Larry Huff began driving for RTP in November 2011, after hearing about the program from a friend. That month, he signed an RTP Volunteer Driver Memorandum of Understanding which provided in relevant part:

> 1. Volunteer agrees to assist in the accomplishment of the goals of RTP by being a volunteer driver . . . .
>
>      . . . .

3. In return for the volunteer's assistance, RTP will reimburse to the volunteer the approved mileage rate(s) per service mile provided by the volunteer.

. . . .

8. The parties specifically agree that the volunteer is not an employee of RTP, and that no employee/employer relationship is contemplated or implied by this MOU or in existence by reason of volunteer's assistance of the goals of RTP.

9. The volunteer may stop volunteer service for any reason and [without] a cause.

[¶5] In the fall of 2011, Huff sold his sedan and purchased a van to have enough space to transport riders. Huff received one day of instruction from RTP, had his vehicle inspected by RTP, and was given two magnetic "RTP" signs to attach to his van. Each morning, RTP provided Huff with a list of his assignments for the day. In 2011 and 2012, RTP used a mileage reimbursement rate of $0.41 per mile, which was commensurate with U.S. Internal Revenue Service regulations. Huff drove for RTP five days per week and received $700 to $800 every two weeks[2] in mileage reimbursement. The hearing officer noted that Huff testified that he was able to retain about half of the reimbursement after paying for gas and vehicle maintenance.

---

[2] The hearing officer found that Huff "generally received between $700.00 and $800.00 per week in mileage reimbursement." However, there is no competent evidence in the record to support that. To the contrary, Huff testified that he "would get between 6, 7, $800 every *two weeks*." (Emphasis added).

[¶6]   On August 21, 2012, Huff was driving for RTP when he was seriously injured in a motor vehicle accident.  Huff filed a petition for award with the Board on July 28, 2014.  Because the question of Huff's employment status was potentially dispositive of his petition, the parties agreed to bifurcate the matter and first determine whether Huff was an "employee" for purposes of the Workers' Compensation Act.  *See* 39-A M.R.S. §§ 101-409 (2016).  After a hearing, the hearing officer issued a decree on April 16, 2015, concluding that Huff was not an RTP employee.  Huff filed a motion for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b), which the hearing officer denied.

[¶7]   Thereafter, Huff filed an appeal to the Workers' Compensation Board Appellate Division, and on November 15, 2016, the Appellate Division affirmed the hearing officer's decision.  In its decision, the Appellate Division concluded that, because "the $[0].41 per mile [Huff] received as reimbursement for the use of his vehicle and gasoline does not in any case constitute remuneration," Huff was not an "employee" under the Act.  In addition, the Appellate Division held as nondispositive the fact that RTP's reimbursement rate for volunteers—$0.41 per mile—was the same rate set out by the IRS for employees, and concluded that it was "not bound by the

IRS's mileage reimbursement regulations." Accordingly, the Appellate Division noted that "[i]t is not the lack of essential control that is fatal to Mr. Huff's claim; it is the lack of remuneration for services." We granted Huff's petition for appellate review. *See* 39-A M.R.S. § 322 (2016); M.R. App. P. 23(c) (Tower 2016).[3]

## II. DISCUSSION

[¶8] At issue is whether the Appellate Division was correct in its determination that Huff was not an employee for purposes of the Workers' Compensation Act.

A. Standard of Review

[¶9] "The issue of employment status is a mixed question of fact and law." *Stone v. Thorbjornson*, 656 A.2d 1211, 1213 (Me. 1995). We review decisions of the Appellate Division "according to established principles of administrative law . . . ." *Bailey v. City of Lewiston*, 2017 ME 160, ¶ 9, 168 A.3d 762 (explaining that we will vacate an agency's decision if it is "affected by . . . error of law") (quotation marks omitted). We "afford appropriate deference to the Appellate Division's reasonable interpretation of the workers' compensation statute, and will uphold that interpretation unless the

---

[3] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed prior to September 1, 2017. *See* M.R. App. P. 1 (restyled Rules).

6

plain language of the statute and its legislative history compel a contrary result." *Id.* (citation omitted) (quotation marks omitted). However, "in the absence of fraud," the hearing officer's factual findings are final. 39-A M.R.S. § 318 (2016). Where a party has filed a M.R. Civ. P. 52(b) motion for additional findings of fact and conclusions of law, "we review the original findings and any additional findings made in response to the motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Bayberry Cove Children's Land Tr. v. Town of Steuben*, 2013 ME 35, ¶ 5, 65 A.3d 1188 (quotation marks omitted).

B.     The "Payment" Requirement of the Workers' Compensation Act

[¶10]   The Workers' Compensation Act requires the payment of compensation to an "employee who . . . receives a personal injury arising out of and in the course of employment . . . ." 39-A M.R.S. § 201(1) (2016). The Act defines "employee" as a "person in the service of another under any contract of hire, express or implied, oral or written . . . ." 39-A M.R.S. § 102(11)(A) (2016).

[¶11]   As such, in accordance with the statute, there are two elements that give rise to the employer-employee relationship. The first element is

"whether or not the employer has retained the right to control" the worker. *Harlow*, 327 A.2d at 859 (quoting *Owen v. Royal Indus., Inc.*, 314 A.2d 60, 62 (Me. 1974)). Where an employer does not "exercise[] essential control or superintendence" of that worker, 39-A M.R.S. § 102(13) (2011),[4] there is no employer-employee relationship for purposes of the Act. *See West v. C.A.M. Logging*, 670 A.2d 934, 936-37 (Me. 1996); *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me. 1982). Because RTP's control of Huff is not the issue before us, we focus solely on the payment requirement of the employer-employee relationship.

[¶12] The second element of an employer-employee relationship is "payment, or expected payment, of some consideration by an employer to an employee . . . ." *Harlow*, 327 A.2d at 859. This element necessarily "exclud[es] from coverage purely gratuitous workers who neither receive, nor expect to receive, pay or other remuneration for their services." *Id.* (quotation marks omitted); *see* 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 65.01 at 65-1 (2000) ("The word 'hire' connotes payment of some kind.").

---

[4] Section 102(13) was repealed and replaced by section 102(13-A). *See* 39-A M.R.S. § 102(13-A) (2016), *amended by* P.L. 2011, ch. 643, §§ 7-8 (effective Dec. 31, 2012). However, because Huff's injury occurred on August 21, 2012, section 102(13) guides our analysis here.

8

[¶13]  Huff argues that he received remuneration because he "expected to be paid for the mileage he drove, [and] relied on the money to live on."  He contends that he was an employee, not a "purely gratuitous" worker, because he "expect[ed] to receive . . . pay or other remuneration for [his] services."  RTP argues that Huff did not receive remuneration "for his services," but rather, was reimbursed solely for expenses incurred as a result of driving his car.  RTP further argues that Huff may not be "convert[ed]" from a volunteer into an employee merely "because he was thrifty enough with his vehicle[-]related spending to 'profit' off his mileage reimbursement – at least in the short term . . . ."  According to RTP, this theory of remuneration ignores the possibility that a driver may experience poor gas mileage or require more regular maintenance than Huff, thereby eliminating any claimed remuneration that the driver may experience.

[¶14]  This case presents an issue of first impression in Maine— whether a mileage reimbursement to a "volunteer" can constitute remuneration when it is significant enough to exceed the volunteer's immediate expenditures.  We conclude that the Appellate Division reasonably interpreted the Workers' Compensation Act to determine that Huff did not receive any payment for services from RTP.

[¶15] Aside from the fact that Huff signed a document indicating that he was merely a "volunteer," and that the only remuneration he received reflected his mileage, the reimbursement rate of $0.41 per mile does not compel us to overrule the Appellate Division's decision that such reimbursement did not constitute payment for services. Rather, the Appellate Division's interpretation was reasonable, and the hearing officer's finding that Huff was able to operate his vehicle for less than the reimbursement rate does not mean that the rate constituted payment for purposes of the Act. There may be a case where the reimbursement rate for mileage is so high, or the receipt of other benefits is so great, that a reasonable interpretation of the Workers' Compensation Act would compel us to conclude that the reimbursement for those services constituted payment for services.[5] *See Cardello v. Mt. Hermon Ski Area, Inc.*, 372 A.2d 579, 580 (Me. 1977) (concluding that a ski patroller for the National Ski Patrol was not a "purely gratuitous worker" where his family received "a season pass to ski at the reduced price of $10.00" and he received "free liquid refreshments—coffee, soda or hot chocolate") (quotation marks omitted). However, that is not the

---

[5] Huff's argument is based on consideration of his costs for fuel and maintenance. In reality, this understates his actual operating cost because it does not account for such expenses as the amortized or depreciated cost of the vehicle itself, insurance, and excise tax. When these costs are taken into consideration, the margin—which he claims is a form of "payment"—is reduced or possibly even eliminated altogether.

case before us, and we therefore cannot say that it was unreasonable for the Appellate Division to conclude that the reimbursement provided to Huff did not constitute payment for services.

[¶16]  Huff also argues that even if the reimbursement he received is not considered payment for services, he nonetheless retains a right to compensation because he "submit[ted] himself to the control" of RTP.  *See Harlow*, 327 A.2d at 860 n.2.  We disagree.

[¶17]  As noted above, the Worker's Compensation Act requires that compensation be paid to an "employee who . . . receives a personal injury arising out of and in the course of employment . . . ."  39-A M.R.S. § 201(1).  The Act defines "employee" as a "person in the service of another under any *contract of hire*, express or implied, oral or written," 39-A M.R.S. § 102(11)(A), (emphasis added), and "[t]he word 'hire' connotes payment of some kind." 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 65.01 at 65-1.  Thus, the Act's definition of "employee" plainly anticipates that a worker must receive remuneration as payment for his services in order to be entitled to compensation under the Act.  *See* 39-A M.R.S. § 102(11) (2016). Where a worker "submits himself to the control of another" but does not receive payment, he is not an "employee" for purposes of the Act.

The entry is:

Judgment affirmed.

---

James J. MacAdam, Esq., Nathan A. Jury, Esq., and Donald M. Murphy, Esq. (orally), MacAdam Jury, P.A., Freeport, for appellant Larry Huff

Matthew W. Marett, Esq. (orally), Maine Employers' Mutual Insurance Company, Portland, for appellees Regional Transportation Program and Maine Employers' Mutual Insurance Company

Workers' Compensation Board Appellate Division docket number 15-0027
FOR CLERK REFERENCE ONLY