## GUY L. MITCHELL'S CASE.

### Androscoggin.    Opinion September 22, 1922.

*Differentiation between "casual employment" and employment within the purview of the Workmen's Compensation Act.    Also what constitutes an "independent contractor."*

Employment cannot be regarded as "casual" when one is hired to do a particular part of the service connected with the usual business of the employer, which part is sure to occur and reoccur from time to time, not perhaps on fixed dates, but with some degree of regularity in the usual and necessary conduct of affairs and when such contract of employment is entered into with a fair expectation on the part of both employer and employee that it shall continue for a reasonable period of time.

The determination of the question whether claimant was "an independent contractor" depends upon the question as to who had the right to control the work claimant was doing at time of injury.

On appeal by defendant. This is a proceeding under the Workmen's Compensation Act, and the questions involved are as to whether claimant at the time of the injury was an employee within the purview of the Act, or, as claimed by defendant, was either within the exceptions as a casual employee, or was an independent contractor. The claimant, a farmer, lived near to the quarry of the Maine Feldspar Company, and for the past six years, had been in the employ of that company, to a certain extent, under an oral understanding that whenever in the carrying on of the business it should become necessary to move a boiler from place to place in the quarry he should with the aid of other employees of the company take his team and move it.

Furthermore, the claimant agreed to haul water for the company whenever required. The claimant held himself in readiness to respond to the company's call at any time and did so respond. The labor was intermittent. On January 20, 1921, while engaged in moving the boiler he received an injury to his foot. The Chairman of the Industrial Accident Commission held that the facts brought the claimant within the purview of the Act as an employee, and awarded him compensation, from which finding the defendant appealed. Appeal dismissed. Decree of sitting Justice affirmed.

The case is fully stated in the opinion.

*George C. Wing and George C. Wing, Jr.,* for plaintiff.

*Hinckley & Hinckley,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, DEASY, JJ.

CORNISH, C. J. The only issue in this case is whether the claimant at the time of the injury was an employee of the defendant within the purview of the Workmen's Compensation Act or, as claimed by the defendant, was either within the exceptions as a casual employee or was an independent contractor.

The undisputed facts are these. The claimant is a farmer living next to the quarry of the Maine Feldspar Company. For the past six years he has been in the employ of that company to a limited extent, under an oral agreement that whenever in the carrying on of the business of the company it should become necessary to move a boiler from place to place in the quarry he should take his team and with the aid of other employees of the company should move it. It is necessary in the operation of the plant to have the boiler at or near

the point of drilling and as these points are changed from time to time it becomes also necessary to change the position of the boiler. In addition the claimant agreed to haul water for the company whenever required. In the Spring the pits in the quarry were filled with water and that could be used for the purposes of the business. When this failed the claimant hauled what was necessary.

The wage agreed upon was eighty cents per hour for himself and team and he held himself in readiness to respond to the company's call at any time and did so respond. The labor was intermittent. At times he has worked for the defendant three or four days in succession, and again there might be an interval of two weeks when he was not needed. The superintendent testified that the claimant moved the boiler every two or three weeks and as a rough average during the year 1920 he might have worked six hours every three weeks over a period of six months, with the exception of the last two weeks in December, the total amount of wages being $44.52.

For a period of six years prior to the accident Mitchell had worked for the defendant under this general arrangement and in this general manner. It was while engaged in moving the boiler on January 21, 1921, that he was injured.

### 1.   "EMPLOYMENT BUT CASUAL."

The language of the Maine statute upon which our decision is based is this. "Employee shall include every person in the service of another, under any contract of hire express or implied, oral or written, except . . . . (d) person whose employment is but casual, or is not in the usual course of the trade, business or occupation of his employer." Public Laws, 1919, Chap. 238, Sec. 1, Par. II.

It is not disputed that Mitchell was engaged in the usual course of the company's business at the time of the accident and therefore the second clause has no application. Our discussion is concerned with the first clause, pertaining to the casual employee.

In seeking for precedents on this point we must be careful to select decisions based on statutes identical in this respect with our own. Neither the English decisions nor the decisions in this country based upon statutes exactly like the English afford us any authority. The exception in the English statute reads as follows: "Whose employment is of a casual nature and . . . . otherwise than for the

purpose of the employers trade or business." Under this provision it is not enough that the employment be of a casual nature. It must also be outside the ordinary business of the employer in order to take a person out of the ranks of employees. *Hill* v. *Bogg*, K. B., 1908, 802. The same construction under the same statutory phraseology has very properly been held in several American States, as in Minnesota under Public Laws of 1913, Chap. 467, Sec. 8; *State* v. *District Court*, 131 Minn., 352, 155 N. W., 103; and in Connecticut, under Public Laws, 1915, Chap. 288, Sec. 22; *Thompson* v. *Traviss*, 90 Conn., 444.

In Maine, however, the words are: "person whose employment is but casual," and then in place of the conjunctive "and" as in the English and similar acts, follows the disjunctive "*or* is not in the usual course of trade, business or occupation of his employer." In this respect the Maine statute is precisely the same as that enacted in Massachusetts, and to those of Michigan and Illinois. The decisions of these states under the same statute are therefore directly in point, and in these states the decisive test has been held to be not necessarily the nature of the work to be performed but the nature of the contract for service itself, that is, the contract of hiring. "The phrase of our act tends to indicate that the contract for service is the thing to be analyzed, in order to determine whether it be casual, while in the English act the nature of the service rendered is the decisive test." *Gaynor's Case*, 217 Mass., 86; *Cheever's Case*, 219 Mass., 244.

A casual employee under this definition is well illustrated by the Illinois case of *Smith* v. *Industrial Accident Com.*, 299 Ill., 377, 132 N. E., 470, where the claimant testified: "I just came through that (the employers lumber yard) and he asked me if I wanted to work. I had been working for the Chicago Stove Works for years and years." He also testified that he had worked for this employer before on ten or fifteen occasions but only for a half day or a day or two at a time. The court in holding the contract of service to be casual said: "The ordinary definition of the word 'casual' is that which comes without regularity and is occasional as distinguished from its antonyms which are, 'regular', 'systematic', 'periodic' and 'certain'. Where the employment for one job cannot be characterized as permanent or periodically regular but occurs by chance or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual. . . . . It is evident from

the record that Murowski's employment by plaintiff in error was not regular but occurred by chance.	There is no evidence of any arrangement between him and plaintiff in error that he should have the work of helping to unload cars whenever they came in, but on those instances when he did work for plaintiff in error it was because he happened to be out of employment and was called upon to help on that particular job." See also *Aurora Brewing Co.* v. *Industrial Board,* 277 Ill., 207, 115 N. E., 207, and *Scully* v. *Industrial Board,* 284 Ill., 567, 120 N. E., 492, cited in *Smith* v. *Boiler Co.,* 119 Maine at 565.

Applying the same test the contract of service was held to be casual where a waiter was employed by a caterer to serve at a single banquet, *Gaynor's Case,* 217 Mass., 86, and where a teamster was employed at odd jobs in hauling coal by the proprietor of a retail coal business, the employment being for no fixed period of time and for no specified job, *Cheever's Case,* 219 Mass., 244.

On the other side of the line of cleavage a typical illustration of employment of service not casual, although for an uncertain period, may be found in *Dyer* v. *Black Masonry and Contracting Co.,* 192 Mich., 400, 158 N. W. 959, where the complainant was employed to oversee the unloading of glass brought to a building under construction, as the work progressed, the service being sure to recur but not at regular intervals.	The court in discussing this point laid down the distinction under consideration in these words:	"It became necessary in the interest of the business of the general contractor to have the delivery of the glass looked after and supervised and claimant was employed for that purpose; that, as the glass was to be delivered as the work progressed on recurring occasions, it certainly cannot be said any of the necessary work to be done in furthering the job or enterprise was casual, for it was sure to occur and reoccur in the operation of the job.	There was an element of certainty in the work recurring at times, which though they could not be fixed definitely, yet were fixed generally by the agreement to look after and assist in unloading the glass as it arrived from time to time.	In our opinion the employment of the claimant was not casual."

It would be difficult, if not impossible, to formulate a hard and fast inclusive and exclusive definition of "employment but casual" under the Maine statute, but it may be safely said that the employment cannot be regarded as casual when one is hired to do a particular part

of the service connected with the usual business of the employer, which part is sure to occur and reoccur from time to time, not perhaps on fixed dates but with some degree of regularity in the usual and necessary conduct of affairs, and when such contract of employment is entered into with a fair expectation on the part of both employer and employee that it shall continue for a reasonable period of time.

Constant employment does not necessarily mean constant service. The employment as continuing is certain. The work itself is certain as something that will need to be done. The exact time of its performance may be uncertain, but that does not render either the contract of hiring or the work itself casual. "The employment is not to be deemed casual . . . . when it is for a part of the employee's time at more or less regularly recurring periods." 28 R. C. L., 707.

In the case at bar the work for which Mitchell was employed was a necessary incident of the successful operation of the quarry. The moving of the boiler to accompany the change of drill from place to place was indispensable. So at times was the hauling of water.

The claimant's testimony is that for six years prior to the accident there had been an understanding or agreement between the parties that he should do this work, whenever needed, and he had done it. The price was also agreed upon, eighty cents per hour for self and team. The contract of hiring was not for each period of work at the end of which the contract should cease. It was a continuing contract covering the future occasions as they should in turn arise.

Moreover, the average amount paid the claimant could, if desired, have been ascertained for each year and might be included in the basis of wages to employees for the computation of insurance premiums, which is a part of the scheme of the Compensation Act, with nearly as close accuracy as though the contract of employment covered every day.

In view of all these facts we find that the claimant was not a casual employee within the meaning of our statutory exception.

2. INDEPENDENT CONTRACTOR.

This point was not set up by the defendants in their answer and strictly speaking should not be open to them now. No amendment was made or asked for. Public Laws 1919, Chap. 238, Sec. 32.

It may be added, however, that in our opinion the relation of master and servant existed between the parties and not that of an independent contractor. The determination of this question depends upon who had the right to direct and control the work of the claimant. Was he a law unto himself responsible only for results, or was he subject to the dictation of the superintendent of the quarry? Clearly the latter. He hauled the boiler from whatever place and to whatever place the master directed. He hauled the water in the same way. He obeyed orders. He was not working for himself but for the Quarry Company, and he was paid not by the job but by the hour like any other employee. Under the well-settled principles of law he could not be regarded as an independent contractor. *McCarthy* v. *Second Parish*, 71 Maine, 318; *Keyes* v. *Baptist Church*, 99 Maine, 308.

The entry must be:

> *Appeal dismissed.*
> *Decree of sitting Justice*
> *affirmed.*