EDNA H. KIRK, ALLEGED DEPENDENT WIDOW OF CHARLES M. KIRK

*vs.*

YARMOUTH LIME COMPANY AND TRAVELERS INSURANCE COMPANY.

Androscoggin.      Opinion, September 10, 1940.

74

*Barnett I. Shur,*
*Hyman Jacobson,* for petitioner.
*William B. Mahoney,*
*James R. Desmond,* for respondents.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

HUDSON, J.   Appeal by defendants from decree of a justice of the Superior Court confirming decree of Industrial Accident Commission awarding compensation to the petitioner.

There is no factual dispute. The issue raised, being one of law, is reviewable by this court. *Murray's Case*, 130 Me., 181, 184, 154 A., 352 ; *Clark's Case*, 124 Me., 47, 50, 126 A., 18.

In dealing with the Workmen's Compensation Act, its provisions must be liberally construed in favor of the workman and those dependent upon him. *Murray's Case*, supra, on page 184 ; *Wardwell's Case*, 121 Me., 216, 116 A., 447.

The petitioner is the dependent widow of Charles M. Kirk who died on November 10, 1938, at North Turner while operating a Chevrolet dump truck owned by him. It went off the road, collided with a tree, tipped over, and killed Mr. Kirk instantaneously.

His employer, the Yarmouth Lime Company, had contracted with the Agricultural Adjustment Administration for the reclamation and removal of waste lime and for its delivery in such quantities and to such farms in the counties of Androscoggin, Sagadahoc, Oxford, Cumberland and York as might be designated by the state executive officer of the Agricultural Adjustment Administration. Deliveries were a part of the company's regular business. It had no trucks of its own, but made arrangements with various owners, including Mr. Kirk, for the use of their trucks in making the deliveries. The truck drivers were not carried upon the payrolls of the company, but a record of payments to them was entered in a separate book.

The employment of Kirk was effected by his brother-in-law, one Davis. The company agreed to pay Kirk $1.50 a yard for each cubic

yard of lime hauled, wherever its destination within said counties and regardless of the amount of mileage involved in the haul. He commenced work November seventh; he hauled four loads on the seventh, four on the eighth, three on the ninth, and on the tenth was returning from the delivery of his second load when the accident happened.

The size of the load and its destination in each instance were designated by the company. In loading, use was made of the defendant's shovel and conveyor. No control was exercised by it over the actual operation of the trucks on the highway or over the route selected, but upon request, the company would assist drivers in mapping out the shortest route. When taking their loads, the drivers receipted for them and were given receipts by the company to be signed by the persons to whom deliveries were to be made. The unloading was done by the drivers and in most instances they returned the signed receipts.

As to time Mr. Kirk's employment was indefinite. Any time he was subject to discharge and could quit at his pleasure. The drivers took their loads in turn and if there were no deliveries to be made on any day, they had no work from the company and it sustained no liability as a consequence thereof. Kirk did not agree to deliver any gross amount of lime.

The only question before us is whether Mr. Kirk at the time of the accident was an employee or an independent contractor. The commission determined his status to be that of an employee.

Under the Workmen's Compensation Act, an employee is defined to be "every person in the service of another under any contract of hire, express or implied, oral or written," with certain exceptions not here applicable. Par. II, Sec. 2, Chap. 55, R. S. 1930, as amended. It is well settled in this state that an independent contractor is not an employee within the meaning of this Act. *Clark's Case*, supra; *Mitchell's Case*, 121 Me., 455, 118 A., 287.

As to what constitutes an independent contractor as distinguished from an employee has been before this court several times.

In *McCarthy* v. *Second Parish of Portland*, 71 Me., 318, decided before the enactment of the Workmen's Compensation Law, the court said on page 321:

"True, the law makes a master responsible for the negligence of his servant, but the employment of one who carries on an independent business, and in doing his work does not act under the direction and control of his employer but determines for himself in what manner it shall be carried on, does not create the relation of master and servant, and this responsibility does not attach."

In *Mitchell's Case*, supra (a Workmen's Compensation case), the court, speaking of the question of whether one were an employee or an independent contractor, said on page 461: "The determination of this question depends upon who had the right to direct and control the work of the claimant," and in applying the law to the facts in that case, added:

"Was he a law unto himself responsible only for results, or was he subject to the dictation of the superintendent of the quarry? Clearly the latter. He hauled the boiler from whatever place and to whatever place the master directed. He hauled the water in the same way. He obeyed orders. He was not working for himself but for the Quarry Company, and he was paid not by the job but by the hour like any other employee. Under the well-settled principles of law he could not be regarded as an independent contractor." *McCarthy* v. *Second Parish*, 71 Me., 318; *Keyes* v. *Baptist Church*, 99 Me., 308.

In *Clark's Case*, supra, it is stated on page 50:

"If the employer has authority to direct what shall be done, and when and how it shall be done, and to discharge him disobeying such authority and direction, and if the employer would be liable to third persons for misconduct of the worker, the other party to the relationship is an employee. . . .

"Whether payment is to be by the piece or the job or the hour or the day is indicative but not decisive. . . .

"What is controlling is whether the employer retained authority to direct and control the work, or had given it to the claimant."

In *Murray's Case*, supra, this court quoted this language from *Brown* v. *Smith* (Ga.), 22 Am. St. Rep., 463:

"One who contracts with another to do a specific piece of work for him and who furnishes and has the absolute control of his assistants and who executes the work entirely in accord with his own ideas or with a plan previously furnished by the person for whom the work is done without being subject to the latter's orders as to the details of the work, with absolute control thereof, is not a servant of his employer but is an independant contractor."

And from *Tuttle* v. *Embury-Martin Lumber Co.* (Mich.), 158 N. W., 878, this:

"The test of the relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent."

On page 186 in *Murray's Case*, supra, it is stated:

"An independent contractor must have under the employment some particular task assigned to him which he has a right to complete and is under obligation to complete, and must be subject to no control in the details of its doing."

And on page 187:

"One of the means of ascertaining whether or not the right to control exists is the determination of whether or not if instructions were given they would have to be obeyed."

Citing *Messmer* v. *Bell* (Ky.), 117 S. W., 348, the court quoted as follows from that case:

"The power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists. While it is not the sole test, it is the best test upon the question of control."

In *Murray's Case*, supra (perhaps the leading case in Maine on the question of law now before us), our court enumerated on page 186 eight recognized tests as follows:

"(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer."

However, no one of these tests is conclusive.

The commission applied these tests to the facts in this case and thereby found as a matter of law that Mr. Kirk was an employee and not an independent contractor and so awarded compensation to the petitioner, the dependent widow.

The commission committed no error. We think it is impossible essentially to distinguish the facts in this case from those in some of the cases cited *supra*. In the *Murray Case*, supra, the petitioner was engaged in unloading coal from railroad cars at the defendant's mill, receiving compensation of twenty cents per ton. There was no definite period of employment; he was subject to discharge at any time without consequent liability. All of the tools and appliances used by him were furnished by the employer. Although he had the right to hire assistants, actually did, supervised their work, paid them out of what he received as compensation, and although the only exercise of control over him was that with relation to place of unloading, yet the court held him to be an employee.

In the *James A. Mitchell Case*, 130 Me., 516, 154 A., 184, Mitchell was employed by the defendant to haul gravel in connection with road construction work. The hiring was for no definite time and no stated amount did Mitchell agree to haul. He was paid by the hour. The employer had the right to direct Mitchell in the place, manner, and method of his work except in the detail of the actual operation of the truck. The court held that although Mitchell's usual business was that of trucking (true, to be considered with other facts in determining his status), he was an employee within the meaning of the Workmen's Compensation Act and

not an independent contractor. That case was held to be indistinguishable from *Dobson's Case*, 124 Me., 305, 128 A., 401, and the earlier *Mitchell Case*, and so now we cannot distinguish the instant case from either of the cited *Mitchell Cases*, the *Dobson Case*, or the *Murray Case*.

But counsel for the defendants claim that the fact that the employer informed Kirk that it would be necessary for him to file an application for a license under our contract carrier statute (Chap. 259, P. L. 1933, as amended) and that he did actually apply for the same (although it is not claimed that he ever received it) manifests an intention to engage in this work as an independent contractor. While this has some bearing upon the issue and must be given proper consideration, yet it is not conclusive. Whether Kirk was an employee within the meaning of the Workmen's Compensation Law or not is a question of law. One might actually intend to enter into an independent contractual relationship and still the terms of the employment be such that the law would determine his status as that of an employee, but here we doubt if the application for this license would evince any real intention of becoming an independent contractor. The idea originated with the employer, the petition for application was filed practically upon its order, and it may well be that Kirk applied for the license so as to be sure of obtaining the employment with no actual intention to become or even considering that he would become an independent contractor rather than an employee.

The real question is: Did Kirk take an independent job or did he, in the language of the statute, engage "in the service of another under any contract of hire?" We think the latter. As stated in the earlier *Mitchell Case*, supra, he was not working for himself but for the company and in the performance of that work he was sufficiently under the control and direction of his employer to take him out of the category of independent contractor.

The application of the *Murray Case* eight tests, aforesaid, to the facts in this case warranted the commission in determining the status of Kirk to be that of an employee.

> *Appeal dismissed. Decree*
> *below affirmed with costs.*