Ronald S. STONE

v.

Edward THORBJORNSON, d/b/a A & S Trucking.

Supreme Judicial Court of Maine.

Argued March 2, 1995.

Decided April 10, 1995.

Ralph L. Tucker (orally), Janmarie Toker, McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for employee.

Kevin M. Gillis (orally), Troubh, Heisler & Piampiano, P.A., Portland, for employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

Ronald Stone appeals from a decision of the Workers' Compensation Board denying his petition for award based on a finding that Stone was an independent contractor as defined by 39 M.R.S.A. § 2(13) (1989) and therefore not entitled to workers' compensation benefits.[1] Because we conclude that the Board's decision is based on a misconception of the applicable legal standard, we vacate the decision of the Board.

Edward Thorbjornson owns fishing vessels and is the sole proprietor of A & S Trucking, a business created to transport fish from fishing boats to market. Thorbjornson hires temporary crews of "lumpers" to unload, sort, cull, and weigh fish from the fishing vessels. Lumpers are casual employees, hired on an as-needed basis without a written contract. The crews are paid per pound of fish processed, with no withholdings for social security or other taxes, and the money is divided evenly among the workers by the crew captain. Thorbjornson does not carry workers' compensation insurance for the lumpers he employs. He provides the work place, i.e., the wharf and building, and all the equipment for the crews. Thorbjornson assigns individual lumpers to perform designated tasks within the crew depending on the worker's level of experience. Although Thorbjornson checks on the crew periodically as the work progresses, he does not directly supervise the performance of the work.

Stone has worked as a lumper exclusively for Thorbjornson since 1986, without a written contract of hire and without any contractual expectation of future work. Stone earned approximately $4,000 in 1991 as a lumper and filed a self-employment tax form at the end of the year. In 1992 Stone filed a petition for award and a petition to fix medical expenses, alleging an injury to his back on October 24, 1991. Thorbjornson filed a petition for review in September 1992. The Board denied the petition for award on December 27, 1993, concluding that Stone was an independent contractor and not entitled to

---

1. Title 39 has been repealed and replaced by Title 39-A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A-7 (effective January 1, 1993). Because the proceeding was pending on the effective date of the new Act, this appeal is governed exclusively by former Title 39. *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 627–28 (Me.1994).

compensation under the Act. The Board denied Stone's motion for findings of fact, and we granted appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1994).

The issue of employment status is a mixed question of fact and law. *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me.1982). 39 M.R.S.A. § 2(5) (1989) provides that an " 'employee' includes ... every person in the service of another under any contract of hire, express or implied, oral or written." Independent contractors are expressly excluded from the definition of employee. Pursuant to 39 M.R.S.A. § 2(13) (added by P.L.1987, ch. 409, § 2), an "independent contractor" is

a person who performs services for another under contract, but who is not under the essential control or superintendence of the other person while performing those services. In determining whether such a relationship exists, the commission shall consider the following factors:

A. Whether or not a contract exists for the person to perform a certain piece of work at a fixed price;

B. Whether or not the person employs assistants with the right to supervise their activities;

C. Whether or not the person has an obligation to furnish any necessary tools, supplies and materials;

D. Whether or not the person has the right to control the progress of the work, except as to final results;

E. Whether or not the work is part of the regular business of the employer;

F. Whether or not the person's business or occupation is typically of an independent nature;

G. The amount of time for which the person is employed; and

H. The method of payment, whether by time or by job.

In applying these factors, the commission shall not give any particular factor a greater weight than any other factor, nor shall the existence or absence of any one factor be decisive. The commission shall consider the totality of the relationship in determining whether an employer exercises essential control or superintendence of the person.

Casual employment is, by definition, irregular, uncertain, and temporary. *Black's Law Dictionary* 218 (6th ed. 1990). The absence of an express, ongoing contractual relationship or regular work hours is not dispositive in cases of casual employment; the ultimate issue is whether the worker is under the "essential control or superintendence" of the employer. 39 M.R.S.A. § 2(13); *Murray's Case*, 130 Me. 181, 185, 154 A. 352, 354 (1931). We have previously addressed casual employment relationships in the timber industry, *Timberlake*, 438 A.2d at 1295,[2] the textile industry, *Murray's Case*, 130 Me. at 183, 154 A. at 353,[3] the mining industry, *Mitchell's Case*, 121 Me. 455, 456, 118 A. 287, 288 (1922),[4] the trucking industry,

2. The employer in *Timberlake* was a "jobber" who cut and transported wood. *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1295 (Me.1982). The employee, Timberlake, owned and maintained his own truck and hauled wood for Frigon. Timberlake was paid by the cord and, because he had no written contract, could be fired at will by his employer.

3. Murray was an "odd-job" man for a woolen mill, whose primary duty was to unload coal. He was paid by the ton with no written contract and could hire his own assistants. As we stated:

There was no agreement between [Murray] and [his employer] fixing any definite period of employment. He assumed no obligation either to unload any number of cars or to unload all of the cars which arrived between particular dates. He could cease work at any time and [the employer] could discharge him at any

time, with or without cause. In neither case could an action for damages for breach of contract have been maintained.

*Murray's Case*, 130 Me. 181, 183, 154 A. 352, 353 (1931).

4. For six years Mitchell received an hourly wage pursuant to an oral agreement with the operator of a quarry to haul water and move a boiler when needed. "The labor was intermittent. At times he ... worked ... three or four days in succession, and again there might be an interval of two weeks when he was not needed." *Mitchell's Case*, 121 Me. 455, 456–57, 118 A. 287, 288 (1922). We expressly found that Mitchell was not an independent contractor for purposes of the Act. At the time *Mitchell's Case* was decided, the Act exempted "casual" employees. P.L.1919, ch. 238, § 1. We held that Mitchell was not a casual employee pursuant to the exemption be-

*Kirk v. Yarmouth Lime Co.,* 137 Me. 73, 74–75, 15 A.2d 184, 185–86 (1940),[5] and the automobile sales industry, *Peerless Ins. Co. v. Hannon,* 582 A.2d 253, 255 (Me.1990).[6] In each of these cases, we concluded that the casual employee could be an employee for purposes of the Act. These decisions are consistent with the statutory exclusion of independent contractors contained in section 2(13).

■■■ The overwhelming weight of evidence indicates that Stone was an employee for purposes of the Act and that the hearing officer misconstrued the statutory standard. Stone had no written contract and was subject to discharge at any time. He could not hire assistants and did not supply his own equipment. He had no control over the hours of employment. Stone's work as a lumper was an integral part of the regular business of his employer as a fisherman and a transporter of fish. Stone did not work for other employers, nor did he hold himself out as an independent contractor. Stone was paid by the pound of fish, which also suggests an employment relationship. *See Timberlake,* 438 A.2d at 1295 (payment by cord of wood); *Murray's Case,* 130 Me. at 188, 154 A. at 355 (payment by the ton).[7] Lumping is not a particularly skilled trade and lumpers receive relatively low wages, making it impractical for them to carry their own workers' compensation insurance. The fact that Stone paid self-employment taxes and was paid without withholdings is not controlling because "withholding practices may simply reflect an attempt to avoid responsibility for providing workers' compensation coverage." *Timberlake,* 438 A.2d at 1298.

Thorbjornson exercised general control over the work. He hired workers, assigned tasks, determined the rate of pay, and determined when and how the work would be done. The fact that Thorbjornson did not exercise control over the details of the work is not dispositive of the employment relationship. As Professor Larson states in his treatise, "the *absence* of exercise of control has seldom been given any weight in showing *absence* of right of control, since the nonexercise can often be explained by the lack of occasion for supervision of the particular employee, because of his competence and experience." 1B A. Larson, *The Law of Workmen's Compensation* § 44.32(c), at 8–104–105 (1994).

■■■ Our review of a Board decision determining employment status is deferential. *Bean v. Alrora Timber, Inc.,* 489 A.2d 1086, 1087 (Me.1985). As we stated in *Timberlake,* 438 A.2d at 1296:

[W]e recognize that there exists with regard to the issue of employment status a decisional range in which reasonable [hearing officers], acting rationally, could disagree. Only when a [hearing officer's] decision falls outside of this range, or when a [hearing officer] misconceives the meaning of the applicable legal standard, are we justified in interfering with his determination.

In this case, the clear weight of evidence points unmistakably to an employee-employer relationship. Although the hearing officer

---

cause his service was part of the regular business of his employer and because he had a continuing, long-term relationship with his employer. The statutory exemption for casual workers was removed from the Act in 1929. P.L.1929, ch. 300, § 2.

**5.** Kirk owned his truck and was paid by the yard of lime hauled for his employer. "As to time Mr. Kirk's employment was indefinite. Any time he was subject to discharge and could quit at his pleasure." *Kirk v. Yarmouth Lime Co.,* 137 Me. 73, 74–75, 15 A.2d 184, 185–86 (1940).

**6.** The employee in *Peerless* was a "car swapper" who was hired without a written contract to drive cars between car dealerships. As we stated,

swappers were not regular employees, they were not on the payroll, worked only when needed, received no benefits or tax statements. . . . Compensation was fixed at the completion of each swap by mutual agreement of the parties. By nature, the job required little supervision and [the employer] allowed his swappers to choose their own routes and make minor personal stops.

*Peerless Ins. Co. v. Hannon,* 582 A.2d 253, 254 (Me.1990).

**7.** *But see* 1B A. Larson, *The Law of Workmen's Compensation* § 44.33 (1994) (payment on a piece-work basis is consistent with either independent contractor or employment status).

described the correct legal standard in analyzing Stone's employment status, the decision focuses on the casual nature of the employment and disregards other critical indicia of the relationship. We therefore conclude that the hearing officer misconceived the meaning of the statutory exclusion, and accordingly we vacate the decision.

The entry is:

Decision of the Workers' Compensation Board vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.