**Richard WEST**

v.

**C.A.M. LOGGING and Commercial Union Insurance Co.**

Supreme Judicial Court of Maine.

Argued Jan. 2, 1996.

Decided Feb. 5, 1996.

Anthony P. Shusta, II (orally), Madison, for Employee.

Michael Smith (orally), Wheeler & Arey, P.A., Waterville, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

Richard West appeals from a decision of the Workers' Compensation Commission denying his petition for award based on a finding that he was an independent contractor and therefore not entitled to workers' compensation benefits. 39 M.R.S.A. §§ 2(5)(A)(7), 2(13) (Supp.1992). Because the Commission " 'misconceive[d] the meaning of the applicable legal standard,'" *Stone v. Thorbjornson*, 656 A.2d 1211, 1214 (Me. 1995) (quoting *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me.1982)), based its decision on irrelevant factors, and ignored the clear weight of evidence pointing to an employee-employer relationship pursuant to the eight-factor employment relationship test provided in subsection 2(13), we vacate the decision.

West drove a logging truck for C.A.M. Logging, which is in the business of cutting, selling and hauling wood to paper mills. At the time he was hired in 1991, C.A.M. gave West the option to work either as an "independent contractor" or as an hourly employee. West was informed that, as an "independent contractor," he would be paid a percentage of the loads he hauled, would not be covered under workers' compensation or health insurance, would be required to provide his own uniform, and would not have taxes deducted from his salary. If he chose to be treated as an hourly employee, West would be paid by the hour with taxes deducted, would be covered by workers' compensation and other insurance, and would be provided a uniform. West elected to be treated as an "independent contractor" under these conditions. There was no written contract.

West was paid by the cord of wood hauled and filed an IRS 1099 self-employment tax form. He was also paid an hourly rate for occasional repair and maintenance-work on the truck or when he was making "clean-up runs" for C.A.M. The truck was owned, registered, insured, and licensed by C.A.M., and C.A.M. paid for all fuel, oil, maintenance,

repairs and parts for the truck, and all fines, except for speeding fines. The truck bore the name, logo, and telephone number of the company and was equipped with a business radio for the purpose of communicating with the C.A.M. office. Except for a brief period in the beginning of the employment, the truck was routinely parked in the C.A.M. driveway during nonwork hours. West did provide his own uniform and hand-tools for minor repairs. All major repairs, however, were made in the C.A.M. garage with tools provided by the employer. C.A.M. directed West where to deliver logs. West occasionally learned directly from the mills when to pick up a load and because certain yards are convenient for particular deliveries, West often knew where to pick up the logs without being instructed.

West was injured on February 10, 1992 when he slipped and fell off the truck while making a routine delivery at an S.D. Warren mill. Wausau Insurance Company, S.D. Warren's insurer, paid West lost wages and medical bills for a period of time, apparently by mistake. When those payments were discontinued, West filed a petition for award against C.A.M. on April 29, 1992. The Commission denied West's petition for award, concluding that he was an independent contractor. The Commission stated that

> West [cannot] have it both ways. It is apparent to me and I so find that he knew and understood that he was an independent contractor from the time he went to work for CAM Logging in the summer of 1991. That was a decision he made when he started hauling for CAM Logging. The evidence indicates he would put more money in his pocket each week as an independent contractor because there would be no deductions from his pay. Perhaps he would also [avoid] any consequences of the Department of Human Services lien. Only after Wausau Insurance Company stopped paying weekly indemnity benefits and medical bills did the employee pursue a workers' compensation claim. I find that he is not an employee pursuant to Section 2(13) of the Act.

Following the Commission's denial of West's motion for findings of fact, he appealed to the Appellate Division. The appeal was not resolved before the Appellate Division went out of existence on January 1, 1994. We granted West's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1995).

The term " 'employee' includes ... every person in the service of another under any contract of hire, express or implied, oral or written," 39 M.R.S.A. § 2(5)(A) (Supp.1992), but expressly excludes independent contractors, 39 M.R.S.A. § 2(5)(A)(7) (1989).[1] Section 2(13) defines an "independent contractor" as

> a person who performs services for another under contract, but who is not under the essential control or superintendence of the other person while performing those services. In determining whether such a relationship exists, the commission shall consider the following factors:
>
> **A.** Whether or not a contract exists for the person to perform a certain piece or kind of work at a fixed price;
>
> **B.** Whether or not the person employs assistants with the right to supervise their activities;
>
> **C.** Whether or not the person has an obligation to furnish any necessary tools, supplies and materials;
>
> **D.** Whether or not the person has the right to control the progress of the work, except as to final results;
>
> **E.** Whether or not the work is part of the regular business of the employer;
>
> **F.** Whether or not the person's business or occupation is typically of an independent nature;
>
> **G.** The amount of time for which the person is employed; and

---

1. Former Title 39 has been repealed and replaced by the new Act, Title 39–A. Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885, §§ A–7, A–8 (effective Jan. 1, 1993). The provisions at issue in this appeal, the first paragraph of subsection 2(5), subsections 2(5)(A)(7)) and 2(13), have been carried over unchanged into the new Act. *See* 39–A M.R.S.A. §§ 102(11)(A), (11)(A)(7), (13) (Supp.1995). Because the proceeding was pending on the effective date of Title 39–A, this appeal is governed exclusively by former Title 39. *Riley v. Bath Iron Works*, 639 A.2d 626, 627–28 (Me.1994).

**H.** The method of payment, whether by the time or by job.

In applying these factors, the commission shall not give any particular factor a greater weight than any other factor, nor shall the existence or absence of any one factor be decisive. The commission shall consider the totality of the relationship in determining whether an employer exercises essential control or superintendence of the person.

39 M.R.S.A. § 2(13) (1989).

■ We give deference to the Commission's findings, and will vacate a decision regarding the employment relationship only when it falls outside the "decisional range in which reasonable Commissioners, acting rationally, could disagree," or "when a Commissioner 'misconceives the meaning of the applicable legal standard.'" *Stone*, 656 A.2d at 1214 (quoting *Timberlake*, 438 A.2d at 1296); *Bean v. Alrora Timber, Inc.*, 489 A.2d 1086, 1087 (1985).

There is little dispute concerning the facts of this case. They are substantially similar to *Timberlake*, 438 A.2d at 1294. In that case, the employer, Frigon, was a "jobber" who cut and transported wood for Boise–Cascade. *Id.* at 1295. The employee, Timberlake, owned and maintained his own truck and hauled wood for Frigon. *Id.* Timberlake was paid by the cord for delivered wood and had no written contract. *Id.* At the time *Timberlake* was decided, there was no statutory definition for "independent contractor" and we relied on common law principles governing employment status. *Id.* at 1296. We concluded that the vital issue in proving an employment relationship is whether the employer has control over the employee, and we relied on eight factors to assist in the determination of "control." *Id.* (citing *Madore v. Liberty Nat'l Bank*, 289 A.2d 36, 38 (Me.1972)); *Kirk v. Yarmouth Lime Co.*, 137 Me. 73, 78, 15 A.2d 184 (1940); *Murray's*

*Case*, 130 Me. 181, 186, 154 A. 352 (1931)).[2] Applying those common law principles to the facts of *Timberlake*, we concluded that "under the traditional control test the factors weigh heavily towards an employer-employee relationship." *Id.* at 1297–98. In particular, we relied on the following facts:

> Timberlake was hired to haul logs for an unspecified period of time. His pay was based upon what he hauled each day, not upon a lump sum for completing some assigned job. Timberlake was not required to furnish any tools for loading the truck. Frigon controlled not only what Timberlake hauled and where he hauled it, but also when and how often Timberlake hauled loads. Timberlake was not under contract to perform a particular task; he could be fired by Frigon at any time. While trucking can be characterized as a distinct calling, here the transportation of wood ... appears to have been part of Frigon's regular business.

*Id.* Because the factors "weigh[ed] so heavily in favor of an employer-employee relationship," we concluded that the decision that Timberlake was an independent contractor was "outside of that range within which [the Court] must defer to the Commission's expertise." *Id.* at 1298. Accordingly, we vacated and remanded for a rehearing on the issue of employment status. *Id.*

■ The facts of this case present an even more compelling case for a conclusion that the parties were operating in an employment as opposed to an independent contractual relationship. Unlike Timberlake, West did not supply his own truck. The fact that West provided his own uniform and hand tools, although itself somewhat suggestive of independent-contractor status, pales in comparative importance to C.A.M. supplying the truck that West used to transport the logs. As Professor Larson states, the issue is not merely whether the employee supplied tools,

---

**2.** In addition to the eight-factor control test, we held that the Act requires that special consideration be given to the relative nature of the work. *Timberlake*, 438 A.2d at 1297–98; 1B A. Larson, *The Law of Workmen's Compensation* §§ 43.50–.54 (1994). Subsection 2(13) was enacted in response to *Timberlake*, with the express purpose of overruling that decision to the extent that it

suggests special emphasis on the "relative nature of the work" factor. P.L.1987, ch. 409, § 2 (effective Sept. 29, 1987); L.D. 1844, Statement of Fact (113th Legis.1987). Although *Timberlake* does suggest special emphasis on this single factor, It is clear that in *Timberlake* we actually applied the eight-factor employment test.

but whether the employee supplied *valuable* tools. 1B A. Larson, *The Law of Workmen's Compensation* § 44.34(b) (1994). As Professor Larson explains:

> [w]hen it is the employer who furnishes the equipment, the inference of right of control is a matter of common sense and business. The owner of a $10,000 truck who entrusts it to a driver is naturally going to dictate details such as speed, maintenance, and the like, in order to protect his investment. Moreover, since he has capital tied up in this piece of equipment, he will also want to ensure that it is kept as productive and busy as possible. For these reasons, it is not surprising that there seems to be no case on record in which the employer owned a truck but the driver was held to be an independent contractor.

*Id.* Because the C.A.M. truck was sufficiently valuable to provide an "incentive for control and for efficient employment of capital," this factor weighs heavily in favor of employment status. *Id.*

Like Timberlake, West had no written contract and was paid by the cord of wood hauled, not a lump sum for completing a particular job. Although Larson suggests that payment for piecework is not indicative of either employment or independent status, 1B A. Larson, § 44.33(c), Maine law has traditionally regarded piece-work as an indicator of the employee-employer relationship. *Stone*, 656 A.2d at 1214 (lumper paid by the pound of fish); *Timberlake*, 438 A.2d at 1295 (trucker paid by the cord of wood hauled); *Kirk*, 137 Me. at 74–75, 15 A.2d 184 (trucker paid by the yard of lime hauled); *Murray's Case*, 130 Me. at 183, 154 A. 352 (payment by the ton of coal). Moreover, in addition to his regular duties hauling wood for C.A.M., West was also paid an hourly wage to perform occasional maintenance and other work. *Murray's Case*, 130 Me. at 183, 154 A. 352 (employee received payment by the ton for unloading coal and a daily wage for general labor).

■ The fact that West may have had limited supervision from C.A.M. during the performance of the work is not controlling. The absence of *exercise* of control is given little weight in showing the absence of the *right* of control, " 'since the nonexercise can often be explained by the lack of occasion for supervision of the particular employee, because of his competence and experience.' " *Stone*, 656 A.2d at 1214 (quoting 1B A. Larson, § 44.32(c) at 8–104–105); *Peerless Ins. Co. v. Hannon*, 582 A.2d 253, 255 (Me.1990); *Murray's Case*, 130 Me. at 185, 154 A. 352.

The controlling issue for purposes of this factor is "whether or not if instructions were given they would have to be obeyed." *Murray's Case*, 130 Me. at 187, 154 A. 352; *see also* 1B A. Larson, § 44.10. Like *Timberlake*, by virtue of its contractual relationship with the mills, C.A.M. "controlled not only what [West] hauled and to where he hauled it, but also when and how often [West] hauled loads." 438 A.2d at 1298; *Kirk*, 137 Me. at 75, 15 A.2d 184. There can be no serious dispute that C.A.M. had the authority to direct West in the performance of his work, whether it was hauling wood or performing the occasional maintenance and clean-up work.

Furthermore, it is not disputed that the trucking of logs is an integral part of the regular business of C.A.M., and that West did not have authority to hire assistants. Both of these factors suggest an employer-employee relationship. 39 M.R.S.A. §§ 2(13)(B), (E). There also is no evidence to suggest that West held himself out as an independent contractor to the general public. *Peerless Insurance Co.*, 582 A.2d at 255; *see* § 2(13)(F). As we stated in *Timberlake*, "[w]hile trucking can be characterized as a distinct calling, here transportation of wood ... appears to have been part of [C.A.M.'s] regular business." 438 A.2d at 1297–98. This conclusion finds additional support from the fact that, unlike Timberlake, West drove a company truck that bore the name, logo and telephone number of C.A.M. Logging on the side.

■ Although the Commission recited that it considered the factors enumerated in section 2(13), few express findings relevant to those factors appear in the decision. Rather, the decision appears to place great importance on the fact that West was given a

chance of electing to be treated as an employee or as an independent contractor, and made a deliberate choice, that he paid self-employment taxes and was paid without withholding. The fact that West chose to be treated as an independent contractor for payroll purposes does not lead to the outcome reached by the Commission. " '[W]ithholding practices may simply reflect an attempt to avoid responsibility for providing workers' compensation coverage.' " *Stone,* 656 A.2d at 1214 (quoting *Timberlake,* 438 A.2d at 1298). Nor does West's decision to file a workers' compensation claim only after payment of weekly indemnity benefits and medical bills was stopped justify the Commission's decision.

Because the Commission based its decision on irrelevant factors and ignored the clear weight of evidence pursuant to the test for independent contractor status provided in 39 M.R.S.A. § 2(13), the Commission " 'misconceive[d] the meaning of the applicable legal standard.' " *Stone,* 656 A.2d at 1214 (quoting *Timberlake,* 438 A.2d at 1296); *Bean,* 489 A.2d at 1087. The undisputed facts of this case compel the conclusion that, pursuant to section 2(13), West was "under the essential control or superintendence of [C.A.M.] while performing" the work, and thus was an employee entitled to workers' compensation benefits.

All concurring.