Haggerty, S. Jane, J.
This matter comes before the Court on the Defendant’s, Ray Atkisson, d/b/a Atkisson & Son (“Atkisson”), renewed motion for summary judgment. The Plaintiffs, Eric Simons (“Simons”) and Shannon Simons, as she is parent and next friend of Airika Simons, brought this civil action against the Defendants seeking to recover damages for injuries arising out of an accident that occurred on August 28, 2003. Atkisson, along with Defendant Keiser Indus *294 tries, Inc. (“Reiser”), previously moved for summary judgment on the ground that, as a matter of law, Simons was an Atkisson employee within the meaning of the Maine workers’ compensation statute, thus barring the Plaintiffs’ claims against Atkisson. After hearing on the motion, this Court denied both motions.
On March 23, 2006, this Court allowed the motion of the Defendants, Reiser, Alfred W. Renworthy, Jr. (“Renworthy”), as Trustee of Henderson Street Realty Trust (the “Trust"), Robert J. J oily, J oanne Renworthy, Scott Renworthy, and Eric Renworthy (collectively the “settling defendants”) for entry of order for separate and final judgment to Mass.R.Civ.P. 54(b). As the only remaining Defendant, Atkisson has renewed its motion for summary judgment. After hearing, and for the reasons set forth below, the Defendant’s renewed motion for summary judgment is ALLOV/ED.

BACKGROUND

The summary judgment record reveals the following undisputed facts. Between 2002 and 2003, the Trust was the owner of parcels of land located on Otis Street and Henderson Street in Everett, Massachusetts (the “properties”). Renworthy, as Trustee, applied for a number of building permits for the properties pertaining to the construction of multi-family homes. At some time in 2003, Renworthy entered into an agreement with Reiser for the purchase of partially prefabricated homes for the properties. The agreement included the installation of the homes on the properties. Subsequently, Reiser hired Atkisson, a Maine company, to provide general contractor services at the construction site.
In early July of 2003, Atkisson hired Simons to work on the properties’ construction site without a written contract. Simons contends that he was retained, with Atkisson’s approval, as an independent contractor. During the summer of 2003, Simons was paid $175 per day and received a weekly paycheck eveiy Wednesday. He received no medical insurance benefits, overtime pay, vacation pay, or sick leave. Simons paid $505.00 for contractor’s insurance effective July 23, 2003 because he was told by Atkisson that sub-contractors were required to obtain such liability policies. At the end of 2003, Atkisson forwarded to Simons a 1099 tax form for independent contractors.
Simons, a Maine resident at the time of the accident, drove to and from the construction site with the rest of the Atkisson crew in Atkisson-owned vehicles. During the job, Atkisson provided Simons and the other crew members with accommodations and, occasionally, meals. Simons never used personal assistants or employed workers on the project. Although Simons brought his own hammer and tape measure to the job, Atkisson supplied the nail guns, roof brackets, planks, air guns, compressors, hoses, nails, siding snaps, drills, comealongs, pull plates, lag guns, circular saws, and all other substantial equipment used on the j ob. Although Simons contends he was free to leave the job site during the workday, he would not be paid when he was not working.
While working for Atkisson, Simons did not advertise himself out as a contractor to any company other than Atkisson. After he was hired in July of 2003, Simons did not set homes for any company other than Atkisson. Although Simons contends that he had a number of general skills that he used on the job, there is no evidence in the summary judgment record that he had any specialized skills that he used on the job. Simons’ job was to set homes, which was an integral, if not the central, part of Atkisson’s business.
On or about August 28, 2003, Simons was working on the roof of one of the buildings being installed on the properties. He was approximately thirty to forty feet above the ground. Throughout the day, Simons and other workers stood on a board that had been placed between two “angle brackets” on the roof. The Plaintiffs contend that the board was improperly installed or secured by Atkisson and there were no harnesses or safety belts available for the workers’ use. As Simons was crossing the board, one of the brackets gave way and Simons fell, striking a crane before finally landing on the ground. Simons was severely injured as a result of his fall.

DISCUSSION

As a preliminary matter, this Court has the power to grant Atkisson’s renewed motion for summary judgment even after denying the original motion. “Though there is no duty to reconsider a case, an issue, or a question of fact or law once decided, the power to do so remains in the court until final judgment or decree.” King v. Globe Newspaper Co., 400 Mass. 705, 707 (1987), quoting Peterson v. Hopson, 306 Mass. 597, 601 (1940). “A judge should hesitate to undo [her] own work . . . But until final judgment. . . there is not lack of power, and occasionally the power may be properly exercised.” King, 400 Mass. at 707, quoting Peterson, 306 Mass. at 603 (citations omitted). “An order merely denying a motion for summary judgment under Mass.R.Civ.P. 56 . . . does not amount to a final judgment and may be modified or changed at any time prior to final judgment.” Dolan v. Von Zweck, 19 Mass.App.Ct. 1032, 1034 (1985).
Entry of summary judgment is appropriate where there are no material facts in dispute and where the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Mass.R.Civ.P. 56(c). Evidence submitted in connection with a motion for summary judgment is to be viewed in the light most favorable to the nonmoving party, and all permissible inferences must be drawn in that party’s favor. Girardi v. Gabriel, 38 Mass.App.Ct. 553, 554 (1995). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admis *295 sions on file, and affidavits. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 552 (1976). Mass.RCiv.P. 56(c). The court should not weigh evidence, assess credibility, or find facts. The court may only consider undisputed material facts and apply them to the law. See Kelly v. Rossi, 395 Mass. 659, 663 (1985). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
In addition, as both parties submit, Maine law governs the question of whether Simons was an Atkisson employee or an independent contractor because Simons received Maine workers’ compensation benefits and the relationship between Atkisson and Simons was centered in Maine. See Sahaeceski v. Marcure, 373 Mass. 304, 311 (1977) (Massachusetts law governed issue of whether workers’ compensation barred claim against fellow employee, where accident occurred in Connecticut and where plaintiff and defendant were both hired and lived in Massachusetts). Under Maine law, an injured employee may not sue his employer for injuries compensable under the state’s workers’ compensation act. Fowler v. Fowler, 948 F.2d 49, 55 (1st Cir. 1991). Likewise, the Maine workers’ compensation statute bars consortium claims against an employer. See McKellar v. Clark Equip. Co., 472 A.2d 411, 414 (Me. 1984) (construing Maine statute).
In the present case, the central question is whether Simons was an employee or an independent contractor under the Maine statutory definition. Under 39-A M.R.S.A. §102(13), an “independent contractor” is defined as:
[A] person who performs services for another under contract, but who is not under the essential control or superintendence of the other person while performing those services. In determining whether such a relationship exists, the board shall consider the following factors:
A. Whether or not a contract exists for the person to perform a certain piece or kind of work at a fixed price;
B. Whether or not the person employs assistants with the right to supervise their activities;
C. Whether or not the person has an obligation to furnish any necessary tools, supplies and materials;
D. Whether or not the person has the right to control the progress of the work, except as to final results;
F.Whether or not the work is part of the regular business of the employer;
F. Whether or not the person’s business or occupation is typically of an independent nature;
G. The amount of time for which the person is employed; and
H. The method of payment, whether by time, or by job.
In applying these factors, the board may not give any particular factor a greater weight than any other factor, nor may the existence or absence of any one factor be decisive. The board shall consider the totality of the relationship in determining whether an employer exercises essential control or superintendence of the person.
There is little dispute concerning the facts of this case. They are substantially similar to West v. C.A.M. Logging, 670 A. 2d 934 (Me. 1996). In West, the plaintiffs claim for a workers’ compensation award was denied by the Maine Workers’ Compensation Commission (the “Commission”). Upon his hiring, the plaintiff had been given the option to work either as an independent contractor or as an hourly employee. As an independent contractor, the plaintiff was told he would not be covered by workers’ compensation or health insurance and would not have taxes deducted from his salary. The plaintiff elected to be treated as an independent contractor. When he was later injured and petitioned for a workers’ compensation award, the Commission stated that the plaintiff “[cannot] have it both ways ... he knew and understood that he was an independent contractor from the time he went to work for [the defendant]... The evidence indicates he would put more money in his pocket each week as an independent contractor because there would be no deductions from his pay.” West, 670 A.2d at 936.
However, the Maine Supreme Court reversed the decision of the Commission, opining that “[t]he fact that [the plaintiff] chose to be treated as an independent contractor for payroll purposes does not lead to the outcome reached by the Commission. ‘[WJithholding practices may simply reflect an attempt to avoid responsibility for providing workers’ compensation coverage.’ ” West, 670 A.2d at 939, quoting Stone v. Thorbjornson, 656 A.2d 1211, 1214 (Me. 1995).
In the present case, the Plaintiffs contend that Simons and Atkisson agreed that Simons was a “subcontractor” and not an employee when he was hired. In addition, the Plaintiffs argue that Atkisson is bound by the statements made by Ray Atkisson, Sr. to his insurance agent, Robert Fryer, Sr. (“Fryer”), two days after Simons’ accident. In the August 30, 2003 incident report, Atkisson told Fryer that:
Mr. Simons was hired by [Atkisson] on 7/9/03 as a sub-contractor. It was discussed with Simons as to whether he wanted to be an employee or sub-contractor and it was Simons’ choice to be a sub-contractor. He obtained liability insurance for his business. Insured paid Simons $170 per day for his services to complete the construction of modular *296 homes that the insured had contracted to “set up.” Simons worked on his own and was not supervised by the insured.
Ray Atkisson, Sr., confirmed at his deposition that the statements attributed to him in the incident report were accurate. The Plaintiffs also argue that the 1099 tax form, sent to Simons by Atkisson for the 2003 tax year, is evidence that Simons and Atkisson consider Simons to be an independent contractor.
Contrary to the Plaintiffs’ assertions, however, evidence concerning Simons’ income tax returns, Atkisson’s withholding practices, or the intentions of either party is of little consequence. “One might ‘intend to enter into an independent contractual relationship and still the terms of the employment be such that the law would determine his status as that of an employee . . .’ ” Timberlake v. Frigon & Frigon, 438 A.2d 1294, 1298 (Me. 1982), quoting Kirk v. Yarmouth Lime Co., 15 A.2d 184, 185 (1940). “[T]he vital issue in proving an employment relationship is whether the employer has control over the employee, and we rel[y] on eight factors to assist in the determination of ‘control.’ ” West, 670 A.2d at 937. I turn now to a consideration of the undisputed evidence to determine whether Simons, as a matter of law, was an employee or an independent contractor at the time of his injury.
As the Defendant correctly argues, all the pertinent factors demonstrate that Simons was an Atkisson employee under 39-A M.R.S.A. §102(13). Simons did not have a written contract for the work he performed. Simons employed no assistants to help him on the job and had no employees under his supervision. While he furnished his own hammer and tape measure, the dispositive issue is not whether Simons furnished any tools but whether he furnished necessary tools. See West, 670 A.2d at 937 (“The fact that [the plaintiff] provided his own uniform and hand tools, although itself somewhat suggestive of independent-contractor status, pales in comparative importance to [the defendant] supplying the truck that [the plaintiff] used . . . [T]he issue is not merely whether the employee supplied tools, but whether the employee supplied valuable tools.”) (Emphasis in original.) (Internal citations omitted.) Simons testified that he did not supply any of the tools that were necessary to set a house.
In addition, the Plaintiffs have presented no evidence that Simons had the right to control the progress of his own work. Simons testified at his deposition that he was not free to complete assigned tasks while other Atkisson employees continued working. Specifically, he admitted that “What [the boss] said, goes . .. whatever he wanted — you could be in the middle of a job, if he wanted you to do something else, if he asked you to do it, you did it.” Simons Depo. at 92. Simons performed a variety of tasks necessary to set the houses but was not assigned to any specialized tasks. “[W]hatever I was told to do, I — we did, the same way with everybody on the job site.” Id. at 96.
Furthermore, the work Simons performed for Atkisson — setting houses — was an integral part of Atkisson’s regular business: There is no evidence in the summary judgment record that Simons’ business as a laborer and house setter is of the type typically performed by an independent contractor. In addition, while employed by the Defendant, Simons neither advertised himself out to, nor worked for, any company other than Atkisson.
The Plaintiff was hired by Atkisson for an indefinite amount of time and not for the completion of a specific task. He was paid $175 per day and received a paycheck on a weekly basis. He was paid only for the time he spent working on the job site and not for the completion of specific, specialized tasks. Though he was free to leave the job site, he was not paid when he was not working. In addition, Atkisson provided Simons and other Atkisson employees with transportation to and from the Atkisson job site in company vehicles, accommodations, and, at least occasionally, meals.
Finally, the Plaintiffs contend that admissions by Ray Atkisson, Sr. that Simons was not supervised by Atkisson on every task to which he was assigned is evidence that Simons was an independent contractor. However, as in West, the fact that Simons “may have had limited supervision from [Atkisson] during the performance of the work is not controlling. The absence of exercise of control is given little weight in showing the absence of the right to control, since the non-exercise can often be explained by the lack of occasion for supervision of the particular employee, because of his competence and experience.” West, 670 A.2d at 938 (emphasis in original) (internal citations omitted).
In the present case, there can be no serious dispute concerning Atkisson’s authority to direct Simons in the performance of his work. See Id. Pursuant to the eight-factor test for independent contractor status enumetated in 39-A M.R.S.A. §102(13), the undisputed facts of this case compel the conclusion that, pursuant to Section 102(13), Simons was “under the essential control or superintendence of [Atkisson] while performing” the work, and thus was an employee of the Defendant and not an independent contractor. Therefore, for the foregoing reasons, the Defendant Atkisson’s renewed motion for summary judgment must be ALLOWED.

ORDER

For the foregoing reasons, it is therefore ORDERED that the Defendant’s, Ray Atkisson, d/b/a Atkisson & Son, motion for summary judgment is ALLOWED.